BISTES v. CHECKER CAB CO.

(March 10, 1930.   Opinion and Decree.)
(April 7, 1930.   Rehearing Refused.)

P. L. Fourchy, of New Orleans, attorney for Jos. M. Bistes, plaintiff, appellant.

Elias Bowsky, of New Orleans, attorney for Mr. and Mrs. A. H. Landry, defendants in rule, appellees.

Walter Smith, of New Orleans, attorney for Checker Cab Company, Inc., defendant, appellee.

JANVIER, J. In this controversy there is presented for our consideration one question only, and that of law.

We are asked to decide whether the privilege accorded by R. C. C. arts. 2705 and 3218, to the landlord on the movable effects in the leased premises continues to exist in favor of the former landlord, after he has sold the premises, and, if so, whether it continues to exist for seventeen days thereafter.

Joseph M. Bistes was the owner of the property No. 1112-14 Poydras Street. Checker Cab Company, Inc., was lessee of these premises, and used them as a garage.

Mr. and Mrs. A. H. Landry obtained a final judgment against the Checker Cab Company, Inc., and, in an attempt to collect the judgment debt, caused a writ of fieri facias to issue, and, under this writ, on July 10, 1929, seized certain movable property, consisting principally of taxicabs, located in the leased premises.

Shortly prior to the issuance of the writ of fieri facias, the realty had, on June 24, 1929, been sold by Bistes to one Guy L. Deano, and, as appears from the record, on July 1, 1929, Deano became the landlord of the said premises. At that time, to-wit, on July 1, when Bistes sold the realty to Deano, there was rent due by the cab company to Bistes amounting to $1,500.

Bistes took no action looking to the collection of his overdue rent, until July 17, 1929, seven days after the seizure on behalf of Mr. and Mrs. Landry under the writ of fieri facias, and seventeen days after the delivery of the realty to Deano. He then caused a writ of provisional seizure to issue, and, under it, effected the seizure of the movables already held under the writ of fieri facias.

A considerable portion of the fund resulting from the sale of the movables was or must be applied to the payment of the taxes due, and the present contest involves the distribution of the balance of the proceeds, which balance is insufficient to pay in full either the claim of Bistes or the claim of Mr. and Mrs. Landry, so that the sole question presented, as we have stated is: Shall the former owner and landlord, Bistes, receive under his alleged privilege the balance of the proceeds, or shall it be paid to Mr. and Mrs. Landry under their writ of fieri facias.

It is conceded, as, of course, it must be, that, if the landlord's lien still existed on

July 17, 1929, notwithstanding the sale and delivery of the leased premises seventeen days prior thereto, that lien and privilege was superior in rank to the lien created in favor of Mr. and Mrs. Landry by the seizure on July 10, 1929, under the writ of fieri facias. But it is contended that, by the sale of the property, the former landlord and owner lost such privilege as may theretofore have existed by reason of his failure to exercise it while he was yet the owner and landlord.

We have been directed to no decisions of our courts which throw light on the question, but we find in the Civil Code itself certain provisions which we deem significant.

In the first place, under R. C. C., art. 3218, the landlord's right is described as being "of a higher nature than mere privilege." He, the lessor, under that article "may take the effects themselves and retain them until he is paid." Since the landlord is given this extraordinary right, his failure to exercise it before delivering the property to his vendee would seem to deprive him of the power to retain that right after permitting the movables to pass from the physical possession which he formerly had by reason of his ownership of the realty and to be seized under a writ of fieri facias issued by a third person.

In the second place, it seems to us that the intention of the framers of the Civil Code, as expressed in articles 2705 to 2709 thereof, was that the essential requirement to the existence of the lessor's privilege should be the presence on the leased premises of the movables to be seized. Article 2709 recognizes an exception, and permits a seizure under the lessor's privilege for fifteen days after the removal of the movables. This article was inserted for the protection of the lessor, so that the lessee, without the knowledge of the lessor, could not remove the articles and thus deprive the lessor of his privilege. But, even in such case, the privilege exists for only fifteen days, and it would seem to us illogical to hold that, where, by the act of the lessor himself, the movables sought to be seized are no longer in his possession because of his voluntary alienation of the realty, the privilege should exist for more than fifteen days, if at all.

We can see no distinction between removing the movables from the lessor and removing the lessor from the movables.

We believe, also, that to permit the former owner of the premises to seize for rent, after he has sold his realty to another, might bring about controversies between the former owner and his vendee. Suppose, for instance, in the case now before us, the rent had been payable in advance, and had not been paid on July 1. The new owner, Deano, would have been entitled to exercise his privilege on the movables. If the contention of Bistes is sound, he too could have seized the same movables for the rent theretofore due him.

As we view the various codal provisions, it was not intended that an owner of realty, who leases to a tenant, can sell his realty to a third person, and thereafter exercise his theretofore existing right to a landlord's privilege; at least if such action would deprive some third party of rights which, in the meantime, had come into existence.

In oral argument, counsel for Bistes contended that the landlord's privilege has not been lost, notwithstanding the sale of the premises, because, when Bistes sold to Deano, he immediately entered into a lease contract under which he became Deano's lessee, and that he then, in turn, sublet to the Checker Cab Company, and that thus,

though his status as owner terminated, his status as landlord continued without interruption. Even conceding the soundness of this argument, we are unable to find in the record any facts to substantiate the claim that he (Bistes) became Deano's tenant.

For the reasons given, we feel that the fund, or so much as may remain after paying prior liens for taxes and after paying costs, should be applied to the satisfaction of the writ of fieri facias issued on behalf of Mr. and Mrs. Landry.

It is therefore ordered that the judgment appealed from rendered on November 8, 1929, and signed on November 15, 1929, be, and it is, affirmed.