**BOYLSTON et al. v. JONES (CLARK et al., Interveners).**

No. 4726.

Court of Appeal of Louisiana. Second Circuit.

March 2, 1934.

Stephens & Stephens, of Coushatta, for appellants.

S. M. Cagle, of Coushatta, for appellees.

MILLS, Judge.

This suit is brought by the owners of the old Boylston place located near Gahagan, in Red River parish, against their lessee, Paul Jones, for rent of farming land for the years 1931 and 1932, at $125 per year. They claim a lessor's lien and privilege upon the 1932 crop and all property found upon the leased premises. Writs of provisional seizure issued under which seven bales of cotton and other property were seized. Of the seven bales of cotton, four were raised upon adjoining land known as the Clark place, and removed to the Boylston place. The owners of the Clark place, Mrs. Ruth Clark Tanner, Mrs. Lucille Mosley, Martha Clark, through her tutrix,

Mrs. Mattie Clark, intervened, claiming a lessor's lien upon the four bales of cotton removed from their place for their rent, amounting to $95, covering the year 1932, and asking for judgment against defendant in that amount with recognition of their lien and their right to payment by priority out of the proceeds of the sale of the four bales of cotton. They also claim damages in the sums of $15 for attorney's fees and $25 for loss of time, worry, and annoyance. There is no present dispute except as to the four bales.

On the trial of the case, defendant making no appearance, a default judgment was rendered against him in favor of plaintiffs for $200, and in favor of interveners for the sum of $95. Plaintiffs' lien and privilege for the 1932 rent, fixed at $100, was recognized upon all the property seized. Interveners' claim to a lessor's privilege on the cotton was rejected. Defendant was cast for all the costs except that of the intervention, which was assessed against the intervener Mrs. Mattie Clark. From this judgment interveners alone appeal.

There is no dispute as to the facts. Admissions in the record establish that the allowance of rent in favor of plaintiffs for $100 a year was correct. Except for the formal proof of the issuance of the writs and the seizure thereunder, no evidence was offered except the following mutual admission:

"It is admitted that Paul Jones leased from interveners herein certain land on the Clark Place during the year 1932 for the sum of $95.00; that plaintiff herein seized seven bales of cotton as the property of Paul Jones, and that four bales of the cotton were raised on the Clark Place, leased by the defendant, during the year 1932; that no part of the rent Paul Jones agreed to pay interveners during the year 1932 has been paid; that of the four bales bonded herein by interveners, two of them had been removed from the Clark Place for more than 15 days previous to the intervention, and two of them had been moved off the Clark Place less than 15 days, and as to these last two, the 15 day rule does not apply. It is further admitted that Paul Jones purchased from the oil company the house in which the cotton was stored, but said house was located on the property of the Boylston heirs. It is further admitted that the four bales of cotton raised on the Clark Place and bonded herein averaged 491 pounds in weight.

"It is further admitted that of the seven bales originally seized, one bale has been released to Mrs. Clark, and that of the remaining six bales two were raised on the Boylston

property and four bales on the property of Mrs. Clark, and that the said four bales when seized were stored in the house purchased by Paul Jones from the oil company and situated on the Boylston plantation, with the consent of the intervener. That the bale released to Mrs. Clark weighed 480 pounds and brought $26.40, which was credited by Mrs. Clark on a back debt due her by Paul Jones for rent for the year 1931; that interveners bonded the four bales raised on the Clark Place and the other property seized remains yet in the hands of the sheriff."

We are of the opinion that the admission in the record that the four bales in dispute were moved, with their consent, from the place of interveners on to that of plaintiffs, is fatal to interveners' case. Article 2709 of the Civil Code, referring to the lessor's right of pledge, reads as follows: "In the exercise of this right, the lessor may seize the objects, which are subject to it, before the lessee takes them away, or within fifteen days after they are taken away, if they continue to be the property of the lessee, and can be identified."

Article 288 of the Code of Practice reads: "The lessor may seize, even in the hands of a third person, such furniture as was in the house leased, if the same have been removed by the lessee, provided he declare on oath that the same has been removed without his consent, within fifteen days previous to his suit being brought."

If the additional requirement that the lessor make oath that the removal was without his consent conflicted with article 2709 of the Civil Code, the provisions of the Code of Practice would prevail. Flower v. Griffith, 6 Mart. (N. S.) 93.

But in the case of Desban v. Pickett, 16 La. Ann. 350, it is held that it does not conflict; that the two articles are in pari materia; that article 288 of the Code of Practice should be incorporated into article 2709 of the Civil Code, so that full force and effect would be given to all the provisions of both articles. While article 288 particularly refers to furniture in the house, we see no reason why, when it is incorporated in article 2709, it does not require, in all cases where property has been removed from the leased premises and is sought to be seized by the lessor, that it must be shown the removal was without the consent of the lessor. Indeed, we think the legal effect would be the same without the use of the words "without consent" in either article. The right conferred upon the lessor by article 2705 of the Civil Code is more than a lien or privilege; it is a right of pledge cou-

pled with the right of detention. Civ. Code, art. 3218. Privileges are stricti juris. That of the lessor must be considered as a whole. He cannot waive the right of pledge or detention and retain a simple lien. Liens and privileges are created by law and not by consent. So, when a lessor consents to the removal of property subject to his lessor's lien, thus abandoning and relinquishing the right of pledge and detention, the whole lien is lost.

This conclusion is contrary to that expounded in the case of O'Kelly v. Ferguson, 49 La. Ann. 1230, 22 So. 783, 789, in which it is squarely held: "We think the lessor has a double right,—a right of pledge, with its right of detention, and included and resulting right of preference, and a right of privilege proper; that, though he may have lost his right of 'pledge' by permitting the possession of the object subject to it to escape from his grasp, he can still fall back for security upon his privilege, unless that right be also from some cause extinguished."

In this case the court proceeded on the theory that the right of pledge was created by article 2705 of the Civil Code, and the privilege by article 3218, making the two separate and distinct. In our humble opinion, article 3218 creates no new pledge, lien, or privilege. It is merely explanatory of the right granted in article 2705 under the head of "Liens," and is repeated for the purpose of giving it proper rank.

In the O'Kelly Case the court said further: "If this precise question has ever been submitted to this court before, the decision has escaped our notice. Counsel have referred to no adjudication on the subject."

Therefore, if any prior jurisprudence exists, it is not expressly overruled. We find previous jurisprudence as follows:

"The District Judge was of opinion that Del Campo had lost his privilege in permitting more than fifteen days to elapse, after the removal from the premises, without taking any action. In this opinion we concur." Farnet & Noel & Guiraud v. Their Creditors, Del Campo, opponent, 8 La. Ann. 372.

"The evidence establishes the lease for the time claimed, but the court erred in granting a privilege, as it is shown that the furniture was moved from the premises two or three months before this suit was brought." Langsdorf v. LeGardeur, 27 La. Ann. 363.

"The right of pledge exists so long as the property remains on the leased premises, and it may continue for 15 days after the removal; but if it has been removed, and the fifteen days have elapsed, the right of the lessor is

gone, and he has no higher or different claim upon the property than any other ordinary creditor." Conrad v. Patzelt, 29 La. Ann. 465.

We have been unable to find where the ruling in the O'Kelly Case has been referred to in any subsequent decision. We do find the previous jurisprudence as set out in the cited cases followed in Bistes v. Checker Cab Co., 13 La. App. 456, 126 So. 712, 713, where the Court said:

"In the second place, it seems to us that the intention of the framers of the Civil Code, as expressed in articles 2705 to 2709 thereof, was that the essential requirement to the existence of the lessor's privilege should be the presence on the leased premises of the movables to be seized. Article 2709 recognizes an exception, and permits a seizure under the lessor's privilege for fifteen days after the removal of the movables. This article was inserted for the protection of the lessor, so that the lessee, without the knowledge of the lessor, could not remove the articles and thus deprive the lessor of his privilege. But, even in such case, the privilege exists for only fifteen days, and it would seem to us illogical to hold that, where, by the act of the lessor himself, the movables sought to be seized are no longer in his possession because of his voluntary alienation of the realty, the privilege should exist for more than fifteen days, if at all."

Again, in General Motors Acceptance Corp'n v. Hand, 16 La. App. 488, 133 So. 466, where an automobile remained off the premises more than 15 days, it is held that the lessor's privilege is lost.

The cases of Conrad v. Patzelt, Langsdorf v. LeGardeur, and Farnet et al. v. Their Creditors, are cited as authority for the finding in this case.

In Conrad v. Patzelt, supra, the reason given for restricting the landlord's privilege strictly to the period permitted by the Code is that to hold otherwise would conflict with article 123 of the Constitution of 1868 (section 19, article 19 of the Constitution of 1921), which abolishes tacit privileges and provides that registry is necessary to affect third parties. The presence of the property on the leased premises constitutes notice which, by law, continues for 15 days after removal, unless the ownership of the property is sooner transferred.

We therefore conclude that, despite the decision in the O'Kelly Case, the lessor has no privilege apart from, and independent of, his right of pledge, and that the extinguishment of the higher right by removal and sale within 15 days, or removal and lapse of that time, or by removal of the property with the consent of the lessor, puts an end also to his lien and privilege included in and a part of the right of detention and pledge. Accordingly, in the present case, interveners have lost their privilege as to two of the four bales by the lapse of 15 days after removal and their privilege as to the other two bales by consenting to their removal.

The codal provisions as to goods transiently on the premises apply only to those of third persons. As in this case the cotton was at all times the property of the defendant, these provisions do not apply.

█ The judgment of the lower court in so far as it affects the defendant is unappealed from. It is correct in so far as it rejects the claim of interveners to a privilege on the property in dispute. It is also correct in its recognition of the lessor's lien upon the four bales of cotton for the 1932 rent. In so far as it assesses the costs of the intervention against the intervener Mrs. Mattie Clark, it is erroneous. She is not personally a party to the intervention. In any event, these costs could only be assessed against all the interveners. However, as they have obtained final ordinary judgment against defendant for the amount of their rent, we think that all the costs of the lower court should be assessed against him.

The judgment appealed from is amended by assessing all the costs of the lower court against defendant, and, as amended, it is affirmed; the cost of appeal to be paid by interveners.