NAKDIMEN *v.* ROYAL STORES, INC.

4-3840

Opinion delivered April 29, 1935.

James B. McDonough, for appellant.

House, Moses & Holmes and Hardin & Barton, for appellee.

MEHAFFY, J. On July 6, 1928, the appellant, I. H. Nakdimen, and the appellee, Jack Fine, entered into a lease contract whereby the appellant leased to Jack Fine a three-story building at 618 Garrison Avenue in the city of Fort Smith, Arkansas. The lease was to begin on June 15, 1930, and end on June 15, 1940. At the time this lease was made Fine was already occupying the building under a lease which ended June 15, 1930. The lease involved in this case is the one that began June 15, 1930, and ended June 15, 1940. The rent of the building as stated in this lease was $66,000, payable in 120 monthly installments of $500 per month in advance for the first 60 months, and $600 per month in advance for the second 60 months. The lease provided that notes should be given, each note being for one month's rent. The lessee was to make all repairs in the building except the roof, and the lessor was to repair the roof. The lessee was not permitted to assign the lease without the written consent of the lessor. The furniture and fixtures were either in the building at the time or placed in said building soon after the making of the lease, and remained in said building until the fire on March 4, 1932. The fixtures were removed from the building after the fire.

In 1929 the lessee assigned the lease to a corporation called Jack Fine's Palais Royal Stores, Inc., with-

out the consent of Nakdimen. The lease provided that, in case of failure to pay the rents or default of any agreement contained in the lease, the lessor might terminate the lease. The lessor did not consent to the assignment of the lease, and always looked to Jack Fine to pay the rent. It was provided that, in case of failure to pay the rent, the fixtures in said building belonging to the lessee and any other property belonging to the lessee in or about the building should not be removed, and should stand good for whatever back rent might be due on said building. The lease also provided that the lessor should have a lien upon all movable and unmovable property and stocks or any other property belonging to the lessee for the failure of payment of any rents in arrears. A provision in the lease also gave the lessor the right to foreclose the lien on the fixtures.

It was also provided in the lease: ''If any rent shall be due and unpaid by the lessee, or if the said premises become vacant, or if bankruptcy or insolvency proceedings are instituted by or against the lessee, or if the lessee does not keep, perform and observe each and all of the conditions of this lease, the lessor, in any of said events may, without notice or process, terminate this lease and re-enter the said premises, or relet said premises as agent for the lessee, or foreclose the lien herein conferred upon the property belonging to the lessee, the remedies just enumerated being only cumulative of whatever other remedies may be open to the lessor in such events.''

The corporation to which Fine assigned the lease, and transferred all of his property became insolvent, and was adjudicated a bankrupt on November 17, 1931. An order of sale of the property of the bankrupt was made on December 4, 1931, and C. W. East became the purchaser and assigned certificate of purchase to R. Baum, a brother-in-law of Jack Fine. The property of the bankrupt, including fixtures, were scheduled in the bankrupt suit as the property of the insolvent corporation. The property was sold by the trustee subject to the lien of the lessor for rent. R. Baum transferred the property to the appellee, Royal Stores, Inc. The back

rent due at the time the appellee purchased the fixtures was found by the lower court to be $700, and this amount was paid to Nakdimen by Baum. When this suit was brought, Nakdimen had possession of the fixtures, and the suit was brought in the Sebastian Circuit Court in replevin for the fixtures. The cause was afterwards transferred to the chancery court, where it was tried, and a decree was entered on August 2, 1934, the court holding that the fixtures were purchased by the appellee free from any lien, and to reverse this decree this appeal is prosecuted.

There was considerable testimony about repairing the building after the fire, but it is unnecessary to call attention to this, because the court found that Jack Fine owed the rent, and gave judgment against him for the amount of rent due, and there is no appeal from this judgment. The principal question for our consideration and determination is whether the appellant was entitled to a lien on the fixtures for an amount greater than the court found.

Appellant contends first that he has a lien against the fixtures for all rent becoming due up to the abandonment of the lease, which he says is April 1, 1934. The lien in this case is not a common-law lien, nor a statutory lien, but is a lien created by contract, and, in this instance, it describes nothing but the fixtures. But appellant claims that he is entitled to a lien on the fixtures for all the rent that might accrue until the lease was abandoned. When the fire occurred, the fixtures were moved from the building without objection on the part of appellant. A lien of this character exists only while the property is in the building, or if it has been removed from the building without the consent of the landlord. The removal of the property from the building was not objected to by the landlord. No effort was made to foreclose the lien. Again the property was included in the schedule of the corporation that went into bankruptcy, and it was scheduled as the property of the corporation, and not as the property of Jack Fine. While the appellant did not consent to the transfer of the lease or the property, yet he made no objections, and actually received the rent

from the corporation. The lease in this instance gave the appellant a lien on the property of Jack Fine, and not on the property of any one else. Appellant knew that this transfer had been made, knew the property was scheduled in the bankrupt court as the property of the corporation, and he would therefore not be entitled to a lien on the property, except for rent due or, as the lease says, rent in arrears, or back rent. The evidence shows that the property was damaged by fire, but it does not show the amount of the damages, and the property was repaired after the fire. Jack Fine testified that the value of the fixtures was $3,000. This was after they had been repaired.

It must be remembered that a lien created by contract like the lien involved here does not give the landlord any title to the property, nor the right to possession, but only gives him the right to foreclose his lien for rent. A chattel mortgage gives the mortgagee the legal title to the property, and under a pledge or common-law lien the lessor has the possession of the property, but under a contract lien like we have here the lessor has neither the title, nor the right to possession. Therefore when the property was damaged by fire, he had a lien on the property damaged, and on nothing else. The lessee was under no obligation to repair the damages, and the lessor was not entitled to a lien on any property except the particular property that was in the building. This lien on the particular property could be enforced in case there was default in the payment of the rent, but the lease merely created an equitable lien on the property of the lessee, that is, Jack Fine. 2 McAdam on Landlord & Tenant, 1075.

The Louisiana court held in effect that, under the statute, the lessor lost his privilege by permitting more than 15 days to elapse after the removal of the property from the premises without taking any action. *Boylston* v. *Jones*, La. App., 153 So. 53.

We have no statute here, but the removal of the property from the premises, the sale of it by Jack Fine with the knowledge of the appellant, and the sale by the bankrupt court, were all matters to be considered by the chan-

cellor, and he doubtless did consider all these questions in fixing the amount of rent for which the lessor had a lien. It is true Nakdimen says that the goods were stored in appellant's house, but appellant, as we have already said, had no right to possession of the fixtures, and the removal from the leased premises gave him no title to the fixtures, nor any right to the possession. The lease provides that the property shall not be removed, and that it shall stand good to the lessor for whatever back rent may be due on the building.

"A stipulation in a lease that the lessee shall not dispose of any property upon the demised premises until the rent is paid is a mere personal covenant, and is ineffective to reserve a lien." 36 C. J. 481.

This lease retaining a lien on the property was not recorded or filed for record like a chattel mortgage, and was therefore in itself no notice to any one of a lien, unless such persons had actual notice. Therefore any person might purchase the property on which this lien existed and acquire good title if the purchase was made without knowledge of the lessor's lien.

"Our law does not recognize the remedy of distraint for the collection of rent as it existed at the common law, and, by the terms of said lease, a lien only against the furniture of appellee was given as a security for the payment of any rent that should become due and be not paid at the time thereof.

"It contains no words of conveyance of the property, and had no effect to transfer the legal title thereof to the lessor, nor was it intended by the parties to have any such effect. Under it the lessor could not have taken possession of the property from the lessee by replevin, and his only remedy would have been to enforce the lien against it by a suit in equity. It was intended only as a security, and a chattel mortgage is more than that." *Phoenix Ins. Co. v. Fleenor,* 104 Ark. 119, 148 S. W. 650.

Appellant says that it should be remembered that possession of the fixtures is not essential to the lien, and cites *Walker v. Brown,* 165 U. S. 654, 17 S. Ct. 453, and 3 Pomeroy's Equity Jurisprudence, § 1233. We agree with

the appellant that possession of the fixtures by the lessor was not necessary, and the section referred to by appellant in Pomeroy states: ''An equitable lien is not an estate or property in the thing itself, nor a right to recover the thing, that is, a right which may be the basis of a possessory action; it is neither a *jus ad rem* nor a *jus in re.*'' It is simply a security, and a right to foreclose for the payment of the back rent.

It is contended that the appellant had possession of the fixtures, because they were in the store at the time of the fire, and because the lessor had never waived his lien. The evidence in this case shows that the lessor did not have possession, and he certainly had no right to possession. The fact that Mr. Drake might have thought that Mr. Nakdimen had a right to possession is immaterial.

Appellant also calls attention to the case of *Sevier* v. *Shaw,* 25 Ark. 417. That case, however, is discussing a statutory lien. Crop mortgages were authorized by statute.

Appellant calls attention to numerous cases discussing equitable liens, but it is well settled in this State that an equitable lien may be created by contract, as was done here.

Appellant also contends that the lease in this case is a chattel mortgage, and argues that, when one disposes of property upon which there is a mortgage, he is liable to the mortgagee for the value of the property converted. He relies on the case of *Mitchell* v. *Badgett,* 33 Ark. 387. The lease in that case, however, was held to be a mortgage, because it was executed by both parties, the lessors and the lessee, and duly acknowledged at the date of its execution by all the parties to it, and afterwards duly recorded. The court said in discussing that instrument: ''So a written agreement properly executed, stipulating that the amount due for rent of land should be paid before the crops are removed, is a mortgage on the crop.''

In the case of *Phoenix Ins. Co.* v. *Fleenor, supra,* in referring to the lease in the *Mitchell* v. *Badgett* case, this court said that: ''A lease of land duly executed by a landlord and tenant in which a lien was expressly given and

reserved upon all the crops produced upon the land by the tenant, and which provided that no part of same should be removed or disposed of in any way by the tenant or his agent until the note had been paid, or with the consent of the landlord, amounted to a mortgage.''

The lease in the instant case was not acknowledged, and not recorded, and was therefore not a mortgage, but merely an equitable lien.

It is next contended by the appellant that the evidence shows that the purpose of Jack Fine in transferring his property was to defraud Nakdimen of the rents due him under the lease. The appellant did not plead fraud in the lower court, there is no evidence tending to show that the transfer was fraudulent, and the lower court was not requested to decide the question of fraud, and did not decide it. This question is therefore not before us.

It is next contended by the appellant that Nakdimen was entitled to a judgment against the Royal Stores for $6,837.44, the amount of insurance collected on the merchandise. We have already said that the appellant had neither title to the property, nor right to possession, and when the property was destroyed, the appellant's lien was destroyed, and he could in no event recover the amount of the insurance. If the insurance policy had contained a clause protecting his interests, he would have been entitled to recover under the policy. But, not owning the property, he had no right to the insurance collected by the appellee.

Appellant argues that the lease was not terminated either by the assignment of Fine or the proceedings in bankruptcy. The lower court necessarily held with the appellant here, because it gave judgment against Fine for the amount of rent due, and, if the lease had been terminated, the court could not have given judgment against Fine as he did. The court held that the lease was valid and binding on Fine, and that Fine was liable for the amount of the rent.

Other questions are discussed by counsel, but we deem it unnecessary either to set out the evidence or discuss those questions, because the only question involved

here is the amount of rent which was a lien on the fixtures.

We find no error, and the decree is affirmed.