RECONSTRUCTION FINANCE CORPORATION *v.* HOME INVESTMENT COMPANY.

4-9874                                                252 S. W. 2d 398

Opinion delivered November 3, 1952.

E. J. Butler and Arnold Adams, for appellant.

Norton & Norton, for appellee.

MINOR W. MILLWEE, Justice. Appellee, Home Investment Company, intervened in a suit brought by appellant, Reconstruction Finance Corporation, hereinafter called "RFC", to foreclose a chattel mortgage against Forrest City Frozen Foods, Inc., hereinafter called, "Frozen Foods". Appellee's claim, that the lien of RFC's·mortgage was subject to a prior claim or lien of appellee against the mortgaged property under a certain lease contract, was sustained by the chancellor. This appeal follows.

In October, 1946, appellee leased to Thos. W. Notestine the ground floor of a building in Forrest City in which Notestine installed a frozen food locker plant. The lease contract was for a term of five years and contained a provision against subletting or assignment by lessee without written consent of the lessor and that the contract should be binding upon the heirs, successors and assigns of the parties.

Paragraphs 6 and 12 of the lease contract read: "(6) It is mutually agreed that any and all improvements, repairs and additions to the building or premises of every description and character, heretofore or hereafter made by the Lessee, even though attached to the building of the Lessor in a permanent manner, shall remain the separate property of the Lessee and be the same as per-

sonal property for all purposes and these improvements and additions together with all fixtures of every kind and description, including partitions, may be removed from said premises by the Lessee at any time prior to the expiration or termination of this lease, or the expiration or termination of any renewal of said lease as hereinafter provided; provided further that in installing any such improvements, additions and fixtures of every kind and description, and in removing same, Lessee shall not structurally change or damage said building and at the end of this lease or the renewal thereof, shall surrender the leased premises in as good condition as at the time Lessee began making any such improvements thereon or additions thereto.

"(12) If Lessee shall fail or refuse to pay the rentals aforesaid at any time for three consecutive months, or shall fail to do or perform any other of the covenants on his part herein contained, or shall violate in any particular any of the conditions hereof, then and in any or either of such events the Lessor may, at its option, declare this lease terminated, and shall have the right to enter upon and take possession of said property and premises either with or without notice, and evict and expel the Lessee and any or all of his property, belongings and effects therefrom; provided that if the lease is terminated in this manner, the Lessee shall have thirty (30) days after such declaration of the termination on the part of the Lessor in which to remove all improvements, additions, repairs and fixtures as hereinbefore provided in Paragraph 6 hereof; and, no delay in the exercise of the option aforesaid by the Lessor shall be deemed a waiver of its rights to exercise same at a later time; *and there shall be no removal by Lessee of such improvements, repairs, additions and fixtures while in arrears in payment of rent or other obligation hereunder.*" (Italics supplied.)

The lease was recorded August 7, 1948. On May 13, 1947, the Planters' Bank & Trust Co. of Forrest City made a loan of $36,000 to Notestine under an arrange-

ment whereby RFC purchased 75% of said loan and the bank took indorsements from individuals in Forrest City for the other 25%. The chattel mortgage executed by Notestine to secure payment of his note covered the locker equipment and fixtures as well as the lease which he assigned to the bank and the latter assigned to RFC. Notestine defaulted in his loan and rental payments and on August 23, 1948, RFC instituted foreclosure proceedings in which appellee was made a party on October 25, 1948. A foreclosure decree was entered on October 26, 1948, in favor of RFC but subject to the unadjudicated claims of appellee and Roy Butcher Supply.

In its answer filed on November 3, 1948, appellee claimed a prior lien for delinquent rents due under its lease in the sum of $1,135 and asserted that none of the parties had any right to remove the improvements and fixtures until all rents were paid. RFC purchased the mortgaged property, including the leasehold interest, at a receiver's sale November 24, 1948, held pursuant to the foreclosure decree subject to the unadjudicated claims of appellee and Roy Butcher Supply. The latter claim proceeded to a decree which was affirmed in *Roy* v. *Notestine,* 216 Ark. 447, 226 S. W. 2d 66.

RFC did not engage in plant operations and was anxious that the locker plant be maintained as a going concern at the same location, if possible. A group of Forrest City citizens, who were desirous of maintaining the plant for the community, organized Frozen Foods. Attorneys representing RFC, appellee and Frozen Foods entered into negotiations for sale of the locker plant to, and its continued operation by, Frozen Foods at the same location. As a result of these negotiations and at the request of counsel for Frozen Foods, appellee, through its board of directors, on November 24, 1948, issued its written authorization directed to RFC agreeing that the Notestine lease should continue in effect as to Frozen Foods at the same rentals until its expiration date, provided all delinquent rents were paid and current monthly rentals were paid regularly thereafter.

RFC sold the locker plant to Frozen Foods and on December 3, 1948, Frozen Foods executed its note and chattel mortgage to RFC for $30,000, payable $500 monthly, and a few days later paid to appellee the back rents due it in the foreclosure suit against Notestine.

Operation of the locker plant by Frozen Foods also proved unsuccessful and delinquent installment payments to RFC of $10,000, and back rents to appellee of $1,100, had accumulated on February 1, 1951, when RFC filed the instant suit to foreclose its mortgage against Frozen Foods. As in the first suit, RFC asked for foreclosure of the lien of the leasehold assignment along with the plant fixtures and equipment.

Appellee intervened in the 1951 suit seeking judgment against Frozen Foods for back rents and asking that the rights and interests of RFC and others in the fixtures and equipment be declared subject to appellee's prior lien under the lease contract. It also alleged that, following the decree in the first foreclosure suit, counsel then representing RFC agreed with appellee's counsel that the provision against removal of the fixtures in the lease contract was in effect an equitable mortgage which took precedence over the mortgage to RFC; that, relying on such agreement, appellee consented to the sale and assignment to Frozen Foods upon the condition that all rents in arrears first be paid; that the inadequacy of the security of RFC, unless the amount owing could be worked out by Frozen Foods, was well known to all parties and appellee consented to the reinstatement of the lease contract in reliance upon the agreement that it had a first lien upon the property in the leased premises for rents; and that RFC was estopped to deny the first lien of appellee or to assert any right to remove the property until back rents were paid. Trial resulted in a decree on October 30, 1951, granting foreclosure by RFC but declaring its mortgage lien subject to a prior lien in favor of appellee as security for its judgment against Frozen Foods for back rents in the sum of $1,283.52.

RFC contends that the lease contract, and more particularly that provision of Paragraph 12 against removal by lessee of improvements and fixtures while in arrears in payment of rent, was insufficient to create an equitable lien or mortgage upon the fixtures and equipment placed in the leased premises by Notestine or his transferees. Both parties rely on *Nakdimen* v. *Royal Stores, Inc.*, 190 Ark. 724, 81 S. W. 2d 853, where the language of the lease contract was held sufficient to create an equitable lien upon the mortgaged property in favor of lessor for the payment of back rents. The effect of the decision was that, as between the parties to the contract and their privies, an equitable lien existed but such lien was not enforceable against an innocent purchaser without knowledge of the lien. As pointed out by counsel for RFC, the lease contract involved in that case, and others relied on by appellee, contained language expressly reserving a lien and showing a clear intent to pledge the property as security for an obligation.

In the Nakdimen case the court quoted with approval the first sentence of § 1416 of 36 C. J., Landlord and Tenant, which reads: *"A stipulation in a lease that the lessee shall not dispose of any property upon the demised premises until the rent is paid is a mere personal covenant, and is ineffective to reserve a lien.* It has been held, however, that, where a tenant expressly reserves the right to remove fixtures at the end of his term upon the payment of all rent due, his right is thereby limited to a removal at the end of the term, and the lessor's right to prevent such removal until the rent is paid is superior to a chattel mortgage. In some jurisdictions, it is held that a stipulation against removal operates as a mortgage, and if recorded, it creates a lien." (Italics supplied.)

Under the facts in the instant case we find it unnecessary to determine whether the language of the lease contract in question was sufficient to create an equitable lien or mortgage in favor of the lessor, even as between the parties and their privies. Even if the condition

against removal be treated as a mere personal covenant, it was binding upon the lessee and his privies regardless of whether or not it created a lien. We think the evidence clearly shows that RFC merely stepped into the shoes of the lessee in the first foreclosure proceedings and repeated that performance in the instant suit. The lease was assigned to RFC and the mortgage by Notestine expressly covered the lease as well as the physical property. The lessee's and his transferee's interests in the leasehold were foreclosed and purchased by RFC at both foreclosure sales. There are no innocent purchasers involved and RFC became the owner of the lease with full knowledge of all its provisions. It assumed the same position with reference to the lease as did the lessee and had no more right to remove the property while rents were in arrears than the original lessee would have.

It is true that there was a provision against assignment of the lease without written consent of the lessor, but this provision was for the benefit of appellee and is one which it could, and clearly did, waive.

RFC also argues that the lease was not signed or acknowledged by Notestine. While the signature and acknowledgment are blank in the recorded copy of the lease, it is undisputed that lessee and Frozen Foods took possession of and operated the premises under it and RFC relied upon it throughout the proceedings.

We are also of the opinion that the evidence is sufficient to support a finding that counsel representing RFC in the first foreclosure suit agreed that appellee had a prior lien for the payment of back rents. Since we have concluded that RFC is in the same position as the lessee, it is unnecessary to determine whether such agreement and other circumstances connected therewith are such as to estop RFC to deny the existence of a prior lien in favor of appellee.

Affirmed.