In the Matter of **KING FURNITURE CITY, INC.**, Bankrupt.
No. LR–64–B–164.

United States District Court
E. D. Arkansas, W. D.
April 9, 1965.

Eichenbaum, Scott & Miller by C. Richard Crockett, Little Rock, Ark., for petitioner.

Rose, Meek, House, Barron Nash & Williamson, by Harry E. Meek, Little Rock, Ark., for respondent.

GORDON E. YOUNG, District Judge.

This matter is before the Court on a petition for review of an order of the Referee in Bankruptcy which denied to petitioner, Griggs Road Company, a lien on the inventory of the bankrupt and upon the proceeds of the sale of such property.

Petitioner, on March 21, 1963, leased certain premises in North Little Rock, Arkansas, to King Furniture City, Inc., at a monthly rental of $1,000, plus $85 a month for lighting a parking lot. Article XV of the lease provided as follows:

"A. To secure the payment of all rent due and to become due hereunder, and the faithful performance of this lease by Tenant, Tenant hereby gives the Landlord an express contract lien on all property, chattels or merchandise which may be placed in the leased premises, and also upon all proceeds of any insurance which may accrue to Tenant by reason of destruction of or damage to any such property. All exemption laws are hereby waived in favor of said lien. This lien is given in addition to the Landlord's statutory lien and shall be cumulative thereto. This lien may be foreclosed with or without court proceedings by public or private sale, with or without notice, and Landlord shall have the right to become the purchaser, upon being the highest bidder at such sale."

The lease itself was not recorded, but a memorandum lease containing a paragraph identical to the one above set out, was filed for record on April 11, 1963, in the office of the Circuit Clerk and Ex-officio Recorder of Pulaski County, Arkansas, in the real estate records in Book 937 at page 129. Neither the original nor the memorandum lease was filed pursuant to the provisions of the Uniform Commercial Code, Ark.Stats. § 85-9-401.

On June 10, 1964, suit in the Chancery Court of Pulaski County, Arkansas, to foreclose the above mentioned lien was filed, it being alleged that King Furniture City, Inc., was indebted for the rents for the months of March, April, May and June of 1964. On June 17, 1964, a consent decree was entered in which it was found: that King Furniture City, Inc., was indebted to petitioner in the amount of $5,425 (which included one future installment); that King Furniture City, Inc., had agreed to transfer to petitioner its equity in an air conditioning unit for a credit of $1,085; and that petitioner was entitled to a foreclosure of its lien on the inventory of King Furniture City, Inc., for the balance due in the amount of $4,340. In addition to decreeing the lease to be a first lien on all the property, chattels or merchandise located in the leased premises, the decree authorized the removal of the merchandise to a Little Rock store operated by King Furniture City, Inc., where, after marking and identifying it as being subject to the lien, the merchandise was to be sold in the ordinary course of business—the proceeds thereof to be paid into the registry of the Court. Pursuant to this decree, sales in the amount of $2,227.26, represented by customers' checks, were made —but the Clerk of the Pulaski Chancery Court refused to accept the customers' checks for deposit in the registry of the Court. By agreement between petitioner and King Furniture City, Inc., the customers' checks were deposited in a bank account in the joint names of petitioner's counsel and an officer of King Furniture City, Inc., with the intention that the funds would be paid into the registry of the Chancery Court of Pulaski County, Arkansas, after all the checks had cleared.

On June 22, 1964, and while the proceedings in the Chancery Court existed as above set out, a bankruptcy proceeding under Chapter XI was commenced. The Chapter XI proceedings were terminated on August 7, 1964 by the filing of a voluntary petition in bankruptcy.

The $2,227.26 held in the joint bank account, together with other proceeds from the sale of the merchandise, have been transferred to the Trustee in Bankruptcy and exceed the amount of the petitioner's claim.

The Referee in Bankruptcy concluded:

(1) That the asserted lien claimed by petitioner was subject to Chapter 9 of the Uniform Commercial Code, Ark.Stats. § 85–9–101 et seq.;

(2) That petitioner had not established its alleged security interest of record in accordance with the Uniform Commercial Code, Ark.Stats. § 85–9–401;

(3) That claimant's contractual lien was not a "landlord's lien" as set out in Ark.Stats. § 85–9–104(b);

(4) That the Trustee was not barred by the decree of the Chancery Court of Pulaski County, Arkansas, to assert that the claim was a voidable preference under Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96;

(5) That Section 67, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 107, prescribing that certain liens arising within four months of bankruptcy may be valid against the Trustee, only applies to statutory liens; and

(6) That claimant had no priority under Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, because it only applies where the landlord is entitled to priority by applicable state law,

The Trustee is not challenging the transfer of the air conditioning equipment.

The Uniform Commercial Code with respect to secured transactions provides as follows:

"Ark.Stats. § 85–9–102. POLICY AND SCOPE OF CHAPTER.—(1) Except as otherwise provided in Section 9–103 [§ 85–9–103] on multiple state transactions and in Section 9–104 [§ 85–9–104] on excluded transactions, this Article (chapter) applies so far as concerns any personal property and fixtures within the jurisdiction of this state.

"(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also

"(b) * * *

"(2) This Article [chapter] applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This Article [chapter] does not apply to statutory liens except as provided in Section 9–310 [§ 85–9–310]."

"(3) * * *"

"Ark.Stats. § 85–9–310. PRIORITY OF CERTAIN LIENS ARISING BY OPERATION OF LAW.—When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

"Ark.Stats. § 85–9–104. TRANSACTIONS EXCLUDED FROM

CHAPTER.—This Article [chapter] does not apply

"(a) * * *

"(b) to a landlord's lien;

"* * * *"

Under the Uniform Commercial Code a secured party may perfect his security interest by filing for record what is called a "financing statement". The formal requisites of a "financing statement" are set out in Ark.Stats. § 85–9–402. The authority for the filing of a financing statement to perfect a security interest is set out in Ark.Stats. § 85–9–302. Finally, Ark.Stats. § 85–9–401 sets out where the "financing statement" is to be filed.

To avoid the effect of the above statutes, the petitioner, citing and relying upon Nakdimen v. Royal Stores, Inc., 190 Ark. 724, 81 S.W.2d 853, contends that the lease provision above quoted gave to petitioner the ancient remedy of a landlord's distress for rent, which was perfected when the petitioner seized the property through the suit in the state court.

In Nakdimen v. Royal Stores, Inc., supra, Nakdimen had leased to Jack Fine certain premises under a written lease containing a lien clause similar to that here involved. Fine assigned the lease to a corporation which went bankrupt. After the bankruptcy a fire occurred, and as a result thereof the furniture and fixtures were removed and stored in Nakdimen's house. Thereafter the furniture and fixtures were sold by the Trustee in Bankruptcy to Baum, subject to the lien of the lessor. Baum, a brother-in-law of Jack Fine, transferred the property to Royal Stores, Inc. The Supreme Court, in affirming a decree that the purchaser from the Trustee took free of the lien retained in the lease, held in effect that, as between the parties to the contract and their privies, an equitable lien existed but such lien was not enforceable against an innocent purchaser without knowledge of the lien. In so holding, the court said:

"It must be remembered that a lien created by contract like the lien involved here does not give the landlord any title to the property, nor the right to possession, but only gives him the right to foreclose his lien for rent. * * *"

In Bennett v. Taylor, 185 Ark. 794, 49 S.W.2d 608, it was specifically held that the law of Arkansas does not recognize the "harsh and oppressive remedies" of the landlord's common law right of distraint.

From these authorities the court concludes that the lien provision in the lease did not give the petitioner the ancient remedy of a landlord's distress for rent. Furthermore, since the lien is construed by the law of Arkansas as being one created by contract, it follows that it is subject to the applicable provisions of the Uniform Commercial Code.

In the alternative, the petitioner contends that the lien retained by it in its lease is excluded from the provisions of the Uniform Commercial Code by Ark. Stats. § 85–9–104(b), supra, which recites, "This Article does not apply * * * to a landlord's lien." The Trustee counters this contention by taking the position that Ark.Stats. § 85–9–104(b) refers to a statutory landlord's lien—that is, that the words "Landlord's Lien" are always interpreted as referring to the lien given landlords by statute just as the expressions "Mechanics' Liens" and "Laborers' Liens" are universally ascribed to the liens awarded by law to creditors in these categories.

This issue can also be stated in another way—that is, does a lien set out in a lease become a "landlord's lien" under Ark.Stats. § 85–9–104(b) by virtue of the fact that the relationship of landlord and tenant exists between the parties thereto? This Court thinks not, for to permit a lien created by contract in such a manner to be excluded from the requirements of the Uniform Commercial Code would, in many instances, greatly restrict the benefits expected to be ob-

tained from the Uniform Commercial Code in connection with the financing of inventories and lending against accounts receivables.

■ Furthermore, a detailed reading of Ark.Stats. § 85–9–104 (the section excluding certain types of transactions from the Code) in its entirety, together with the comments of the National Conference of Commissioners of Uniform State Laws, indicates that all of the other subsections deal with matters thought to be sufficiently covered by a statute of the United States or of the several states or that they deal with special transactions which do not fit easily into general commercial statute and which are adequately covered by existing law. From this viewpoint it also appears that the term "landlord's lien" as used in the statute must be interpreted as referring to liens created by statute, for the matter of liens on property such as here involved is obviously considered by all of the remainder of the Code as fitting into a general commercial statute.

■ The petitioner's contention that the recording of an instrument pursuant to Ark.Stats. § 16–101 et seq., is sufficient to create a valid lien in a lease such as the one here in question is without merit. Ark.Stats. § 16–101 provides for the recording of deeds or other instruments in writing, of or concerning any lands and tenements or goods and chattels. Ark.Stats. § 16–114 provides that such recording is notice to all persons. The Uniform Commercial Code, which was adopted subsequent to the above statutes, provides that it is a general act intended as a unified coverage of its subject matter, Ark.Stats. § 85–1–104. Therefore, the Court concludes that Ark. Stats. § 16–101 et seq., were repealed by the Uniform Commercial Code insofar as they refer to the recording of instruments concerning "goods and chattels" as giving notice to all persons.

In Chicago, R. I. & P. R. Co. v. Cohen, 223 Ark. 621, 267 S.W.2d 774, the Supreme Court of Arkansas said:

"We have held that where an act of the legislature deals with an entire subject anew, and it is apparent from the mere reading of the new act that it was the intention of the general assembly to cover the entire subject, plainly showing that the new act was intended as a substitute for the old act, there is a repeal by implication. * * *"

■■ Petitioner points to Ark.Stats. § 85–9–401(2), which states that a filing not in all of the places required by the Uniform Commercial Code is nevertheless effective against any person who has knowledge of the contents of such financing statement, and that the memorandum lease filed meets the formal requirements of a financing statement. Based upon those premises the petitioner then contends that he has complied with the Uniform Commercial Code since all persons are deemed to have knowledge of the contents of the memorandum lease because of its filing in the real estate records. This contention fails because: (1) filing in the real estate records does not constitute notice as to personal property, and (2) actual knowledge is required under the Uniform Commercial Code, Ark.Stats. § 85–1–201(25).

■ Finally, petitioner, still contending that the State Court action amounted to nothing more than the ancient remedy of a landlord's distress for rent, says that it is entitled to the full amount of its lien under Section 67, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. c. But since Section 67, sub. c applies only to "statutory liens" and "liens, whether statutory or not, of distress for rent," it follows that petitioner's claim, which is nothing more than a contractual lien, is not given any priority by Section 67, sub. c. See Ginsberg v. Lindel, 107 F.2d 721, 727 (8th Cir. 1939).

■ Nor is petitioner's claim entitled to any priority under Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, because this section only awards priority to a landlord who is entitled to priority by applicable state law. Except in the

case of agricultural leases, Ark.Stats. § 51–201, Arkansas gives a landlord no such priority. See Bennett v. Taylor, supra.

 Therefore, this Court concludes the Referee properly ruled that the pre-bankruptcy decree in the State Court amounted to a voidable preference under Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96.