72 U.S. 307 (____)
5 Wall. 307
GREEN
v.
VAN BUSKIRK.
Supreme Court of United States.

*309 Mr. Carlisle, for the defendant in error.
Messrs. Carlisle and Gale, in support of the motion to dismiss.
Messrs. Turnbull and A.J. Parker, contra.
*310 Mr. Justice MILLER delivered the opinion of the court.
The section of the Constitution discussed in this case, declares that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. And that Congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."
The act of 1790 was intended to be an exercise of the power conferred upon Congress by this section. In the leading case of Mills v. Duryee,[*] this court held that the act in question did declare the effect of such judicial records, and that it should be the same in other States as that in which the proceedings were had. In the case of Christmas v. Russell,[] decided at the present term of the court, we have reaffirmed this doctrine, and have further declared that no State can impair the effect thus to be given to judicial proceedings in her sister State, by a statute of limitation intended to operate on demands which may have passed into judgment by such proceedings, as though no such judgment had been rendered.
The record before us contains the pleadings in the case, the facts found by the court, and the conclusions of law arising thereon. And notwithstanding the inverted manner in *311 which the court has stated its legal conclusions, it seems clear that it did pass upon the effect of the judicial proceedings in Illinois upon the title of the property in contest. The case is not varied by declaring that the mortgage made and delivered in New York overreached the subsequent attachment in Illinois. According to the view taken by that court, Van Buskirk, the plaintiff, had title to the property under the laws of New York by virtue of his mortgage, and the question to be decided was whether the proceedings in Illinois were paramount in their effect upon the title to the New York mortgage.
It is said that Van Buskirk being no party to the proceedings in Illinois was not bound by them, but was at liberty to assert his claim to the property in any forum that might be open to him; and, strictly speaking, this is true. He was not bound by way of estoppel, as he would have been if he had appeared and submitted his claim, and contested the proceedings in attachment. He has a right to set up any title to the property which is superior to that conferred by the attachment proceedings, and he has the further right to show that the property was not liable to the attachment  a right from which he would have been barred if he had been a party to that suit. And this question of the liability of the property in controversy to that attachment is the question which was raised by the suit in New York, and which was there decided. That court said that this question must be decided by the laws of the State of New York, because that was the domicil of the owner at the time the conflicting claims to the property originated.
We are of opinion that the question is to be decided by the effect given by the laws of Illinois, where the property was situated, to the proceedings in the courts of that State, under which it was sold.
There is no little conflict of authority on the general question as to how far the transfer of personal property by assignment or sale, made in the country of the domicil of the owner, will be held to be valid in the courts of the country where the property is situated, when these are in different sovereignties. *312 The learned author of the Commentaries on the Conflict of Laws, has discussed the subject with his usual exhaustive research. And it may be conceded that as a question of comity, the weight of his authority is in favor of the proposition that such transfers will generally be respected by the courts of the country where the property is located, although the mode of transfer may be different from that prescribed by the local law. The courts of Vermont and Louisiana, which have given this question the fullest consideration, have, however, either decided adversely to this doctrine or essentially modified it.[*] Such also seems to have been the view of the Supreme Court of Massachusetts.[]
But after all, this is a mere principle of comity between the courts, which must give way when the statutes of the country where property is situated, or the established policy of its laws prescribe to its courts a different rule. The learned commentator, already referred to, in speaking of the law in Louisiana which gives paramount title to an attaching creditor over a transfer made in another State, which is the domicil of the owner of the property, says: "No one can seriously doubt that it is competent for any State to adopt such a rule in its own legislation, since it has perfect jurisdiction over all property, personal as well as real, within its territorial limits. Nor can such a rule, made for the benefit of innocent purchasers and creditors, be deemed justly open to the reproach of being founded in a narrow or a selfish policy."[] Again, he says: "Every nation, having a right to dispose of all the property actually situated within it, has (as has been often said) a right to protect itself and its citizens against the inequalities of foreign laws, which are injurious to their interests."
Chancellor Kent, in commenting on a kindred subject, *313 namely, the law of contracts, remarks:[*] "But, on this subject of conflicting laws, it may be generally observed that there is a stubborn principle of jurisprudence that will often intervene and act with controlling efficacy. This principle is, that where the lex loci contractus and the lex fori, as to conflicting rights acquired in each, come in direct collision, the comity of nations must yield to the positive law of the land."
In the case of Milne v. Moreton,[] the Supreme Court of Pennsylvania says, that "every country has a right of regulating the transfer of all personal property within its territory; but when no positive regulation exists, the owner transfers it at his pleasure."
The Louisiana court, in a leading case on this subject, gives, in the following language, a clear statement of the foundation of this principle: "The municipal laws of a country have no force beyond its territorial limits, and when another government permits these to be carried into effect within her jurisdiction, she does so upon a principle of comity. In doing so, care must be taken that no injury is inflicted on her own citizens, otherwise justice would be sacrificed to comity... . If a person sends his property within a jurisdiction different from that where he resides, he impliedly submits it to the rules and regulations in force in the country where he places it."
Apart from the question of authority, let us look at some of the consequences of the doctrine held by the court of New York.
If the judgment rendered against the plaintiff in error is well founded, then the sheriff who served the writ of attachment, the one who sold the property on execution, any person holding it in custody pending the attachment proceeding, the purchaser at the sale, and all who have since exercised control over it, are equally liable.
If the judgment in the State of Illinois, while it protects all such persons against a suit in that State, is no protection *314 anywhere else, it follows that in every case where personal property has been seized under attachment, or execution against a non-resident debtor, the officer whose duty it was to seize it, and any other person having any of the relations above described to the proceeding, may be sued in any other State, and subjected to heavy damages by reason of secret transfers of which they could know nothing, and which were of no force in the jurisdiction where the proceedings were had, and where the property was located.
Another consequence is that the debtor of a non-resident may be sued by garnishee process, or by foreign attachment as it is sometimes called, and be compelled to pay the debt to some one having a demand against his creditors; but if he can be caught in some other State, he may be made to pay the debt again to some person who had an assignment of it, of which he was ignorant when he was attached.
The article of the Constitution, and the act of Congress relied on by the plaintiff in error, if not expressly designed for such cases as these, find in them occasions for their most beneficent operation.
We do not here decide that the proceedings in the State of Illinois have there the effect which plaintiff claims for them; because that must remain to be decided after argument on the merits of the case. But we hold that the effect which these proceedings have there, by the law and usage of that State, was a question necessarily decided by the New York courts, and that it was decided against the claim set up by plaintiff in error under the constitutional provision and statute referred to, and that the case is therefore properly here for review.
MOTION TO DISMISS OVERRULED.
Mr. Justice NELSON, with whom concurred Mr. Justice SWAYNE, dissenting.
I am unable to concur in the opinion that has just been delivered. The litigation is one of the most common occurrence growing out of the business affairs of life. It presents *315 the case of a race of diligence among creditors after the property of a failing debtor to get the first security for the payment of their debts. There is no question here as to the bona fides of the creditors. The simple point between them is as to which party in the race acquired the better title to the property. All the parties, debtor and creditors, were citizens and residents of the State of New York. The property was in Chicago, Illinois, consisting of iron safes.
In the race of diligence, the defendants here and plaintiffs below, Van Buskirk and others, obtained from Bates, the debtor, on the 3d of November, an assignment of the property as security for their debt. It was executed at Troy, New York. But, before the agent reached Chicago to take actual possession, Tillinghast & Warren, the other creditors, on the 5th of the month, two days after the assignment, instituted proceedings in a court in Illinois against Bates, the debtor, and attached the safes, subsequently obtained a judgment by default, and sold them on execution.
The present suit was instituted by Van Buskirk and others against Tillinghast & Warren, the attaching creditors, claiming title to the property under and by virtue of their prior assignment. As the two classes of creditors were equally honest, the only question, as we have said, would seem to be which had obtained the better right to their debtor's property; and this appears to have been the view taken by the judge and counsel in the court below.
The trial before a jury was waived, and the case was heard before the judge, who gives a statement of the facts. He found the proceedings in the attachment as set forth. The execution of the assignment, that it was executed in good faith, and not fraudulent. He then states his conclusions of law 
1. That the assignment was a legal and valid instrument, and operated to transfer the property in the safes to the assignees.
2. That by the laws of New York the title thus acquired overreached the title by attachment, being prior in point of *316 time, though the attaching creditors had no notice of the sale or assignment; and 
3. That the laws of New York governed the case.
The defendants excepted to the rulings, and contended 
1. That the assignment was fraudulent and void on its face, and conveyed no title to the plaintiffs against the attachment.
2. That the rights of the parties must be governed by the law of the State of Illinois, and not by the law of the State of New York; and
3. That the plaintiffs have shown no ownership or right of possession to the safes superior to that of the defendants.
A judgment was entered for the plaintiffs, which was taken, on this bill of exceptions, to the higher courts in the State, and was affirmed. It is now here under the twenty-fifth section of the Judiciary Act; and it is claimed that this court has jurisdiction, on the ground that the court below denied full faith, credit, and effect to the Illinois judgment in the attachment proceedings. It is only on this ground that this attachment can be maintained. We have seen that no such point was made on the trial or ruled by the court. These proceedings were in evidence without objection either as to regularity or effect. It was conceded that the attachment bound the goods from the time it was levied. Certainly no greater effect could be given to it; that is, whatever interest Bates, the debtor, had in them at that time. This effect was not disputed. But it was claimed, on the other side, that they had a prior right to the property under the assignment made two days before the levy.
Now, it must be admitted that, as between Bates and the assignees, they became vested with the title; and as the attachment was subsequent, and would only reach the interest of Bates, it would seem to follow that the assignees had the better title; and, if this were all of the case, there could not be two opinions upon it; the title under the attachment must fail. But it is not all, for it is said that this prior assignment was ineffectual to transfer the title to the property, and prevent the operation of the attachment, for the reason that it *317 was fraudulent against creditors, and, being so fraudulent, the seizure under the attachment gave the better title.
The question, therefore, that arose in the case, and the only question, was as to the validity or invalidity of this assignment. If valid, then the title of the safes passed out of Bates to the assignees on the 3d November. If invalid, then it remained in him quoad creditors till the 5th, when the attachment was levied. Now, this question was one simply of law, and it turned upon this: whether the assignment was to be governed by the law of New York, where the instrument was made, and in which State all the parties resided, and of which they were citizens, or by the law of Illinois, the situs of the property. In New York the immediate delivery of the possession, as is said, is not essential to the validity of the assignment; in the State of Illinois it is. The continuance in the possession by assignor or vendor after the transfer of the title is regarded in that State as evidence of fraud, and renders the instrument inoperative as against execution or attaching creditors.
The court below decided that the instrument was to be governed by the law of the State of New York, where it was made, and which was the domicil of the parties. Now, whether the court erred or not in this decision is not the question, for this court has no jurisdiction to determine that. The question here is, whether, in so deciding, the court denied full faith, credit, and effect to the judgment in Illinois. In other words, did the court, in holding that the prior assignment was not fraudulent and void, but valid and effectual to transfer the title, thereby discredit the Illinois judgment? The answer to the question, I think, is obvious. These assignees were not parties to the judgment. It could not bind them. They were free, therefore, to set up and insist upon this prior title to the property; and, if there was nothing else in the case, it is clear the junior attachment could not hold it. It became necessary, therefore, for the attaching creditors to displace the assignment, and this they attempted, by insisting that it was fraudulent and void, as not having been accompanied by possession; and this they *318 were obliged to establish before the attachment could take effect.
The assignment being prior in time, in the absence of fraud, actual or constructive, the title passed to the assignees, and was out of Bates, when the attachment was levied. This is familiar law. The question in the case, therefore, and the one litigated in the court below, was this question of fraud, upon which the validity of the assignment depended, and the finding of which was necessary to give a preference to the claim under the attachment. This question was not only consistent with the full force and effect of the attachment proceedings, but wholly independent of them.
I agree, if the attachment had been levied before the assignment, and the court had given effect to this instrument over the levy, it might be said that full faith and credit had not been given to it; but, being posterior, these proceedings could not have the effect per se to displace the assignment as against a stranger. Another element must first be shown, namely, fraud or other defect in the instrument, to render it inoperative.
My conclusion is, that the regularity of the attachment proceedings was not called in question in the court below; but, on the contrary, full force and credit were given to them, and the case should be dismissed for want of jurisdiction.
NOTES
[*] 7 Cranch, 481.
[] Supra, last preceding case, p. 290.
[*] Taylor v. Boardman, 25 Vermont, 589; Ward v. Morrison, Id. 593; Emmerson v. Partridge, 27 Vermont, 8; Oliver v. Townes, 14 Martin's Louisiana, 93; Norris v. Mumford, 4 Id. 20.
[] Lanfear v. Sumner, 17 Massachusetts, 110.
[] Story on the Conflict of Laws, § 390.
[*] 2 Commentaries, 599.
[] 6 Binney, 361.