In re Charles F. EDDINGFIELD, Debtor.

NORTHEAST MISSOURI ELECTRIC POWER COOPERATIVE, Plaintiff,

v.

Charles F. EDDINGFIELD, Defendant.

Bankruptcy No. 86–80068.
Adv. No. 86–8134.

United States Bankruptcy Court, C.D. Illinois.

Dec. 22, 1986.

Douglas D. Mustain, West, Neagle & Williamson, Galesburg, Ill., for plaintiff.

Michael L. Neff, Hartzell, Glidden, Tucker, Neff & O'Neal, Carthage, Ill., for Marine Trust Co.

Peel, Henning, Mathers and McKee, Galesburg, Ill., for debtor/defendant.

Richard E. Barber, Galesburg, Ill., Trustee.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter comes before the Court on the amended motion of NORTHEAST MISSOURI ELECTRIC POWER COOPERATIVE (NORTHEAST) for relief from the automatic stay.

In February, 1985, NORTHEAST leased two tracts of farmland to CHARLES F. EDDINGFIELD (EDDINGFIELD), the debtor, under separate cash rent agreements. Each lease provided that 40% of the cash rent was payable on March 1, 1985, and that the remaining 60% was due on December 1, 1985. Accordingly, payments were due NORTHEAST on March 1, 1985, in the amounts of $5,629.25 and $2,173.91, and on December 1, 1985, in the amounts of $8,443.87 and $3,260.87. The leases also contained the following provision:

"The Landlord's lien provided by law on crops grown or growing shall be the security for the rent herein specified and for the faithful performance of the lease. If the Tenant fails to pay the rent due or fails to keep the agreement of this lease, all costs and attorneys fees for the Landlord in enforcing collection or performance shall be added to and become a part of the obligations payable by the Tenant hereunder."

On August 8, 1985, EDDINGFIELD executed an extension agreement with MARINE TRUST COMPANY OF CARTHAGE (MARINE TRUST) in connection with a prior note which provided that EDDINGFIELD "agreed to give Marine Trust Company of Carthage a lien on the 1985 crops 190.6 Acres rented from Northeast Missouri Electric Power Cooperative located in Marion County, Missouri." On September 9, 1985, MARINE TRUST recorded a financing statement in Marion County, Missouri.

EDDINGFIELD filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 10, 1986. NORTHEAST is listed as an unsecured creditor for unpaid rent in the amount of $17,140.00.

On April 8, 1986, NORTHEAST filed a motion for relief from the automatic stay to permit reclamation, asserting that it had a landlord's statutory lien upon the crops, which were then in storage at Hull, Illinois. EDDINGFIELD responded to the motion, stating that he had no objection to NORTHEAST reclaiming the crops, but that he was unable to deliver them to NORTHEAST for lack of funds. At some point, the crops were sold and the Trustee is presently holding the proceeds from the sale in the amount of $13,325.97. NORTHEAST then amended its motion, alleging that the soybeans had been sold and seeking the proceeds. The trustee, unsure whether MARINE TRUST had a perfected security interest in the crops, filed a complaint against NORTHEAST to avoid the

statutory lien under Section 545(3) of the Bankruptcy Code.

MARINE TRUST filed a memorandum, taking the position that the Trustee could avoid NORTHEAST'S landlord's lien and that it was a perfected secured creditor under the Uniform Commercial Code and thus entitled to the proceeds of the crop. The trustee advised the Court that he was not going to take an active part in the litigation because the dispute involves only secured creditors and no benefit would result to the unsecured creditors. On request of this Court, additional briefs were submitted by NORTHEAST and MARINE TRUST.

■ As a preliminary issue, this Court considers NORTHEAST's argument that MARINE TRUST does not have a valid security interest. NORTHEAST contends that the language of the extension agreement did not create a present security interest in the crops but rather indicates that EDDINGFIELD intended to grant MARINE TRUST a security interest in the crops at some later date. This Court cannot agree. The extension agreement provides that EDDINGFIELD "agrees to give [MARINE TRUST] a lien on the 1985 crops...." That agreement is dated August 8, 1985. A financing statement, signed by EDDINGFIELD, was filed in Marion County, Missouri, on September 9, 1985. The debtor's signing of a financing statement less than 30 days after executing the agreement negates NORTHEAST's argument that EDDINGFIELD did not intend to give MARINE TRUST a present security interest. Moreover, the language of the extension agreement clearly indicates an intention to give a present security interest in the 1985 crops. Accordingly, MARINE TRUST has a perfected security interest in the crops.

The remaining issues in the case relate to the nature of NORTHEAST's landlord's lien. The relevant provision of Missouri law provides:

"Every landlord shall have a lien upon the crops grown on the demised premises in any year, for the rent that shall accrue for such year, and such lien shall continue for eight months after such rent shall become due and payable, and no longer." Mo.Rev.Stat. Section 441.280 (1978).

NORTHEAST concedes that it does not have a lien upon the crop payments which were due on March 1, 1985. With regard to the payments due on December 1, 1985, totaling $11,704.74, NORTHEAST contends that it has a valid statutory landlord's lien for rent because the debtor's bankruptcy was filed on January 10, 1986, which is within the eight month period provided for by the statute. Under Missouri law, this statutory lien has priority over a perfected security interest. *Dunlap v. Dunseth*, 81 Mo.App. 2 (1899).

■ Attempting to subject NORTHEAST's lien to the requirements of the Uniform Commercial Code, MARINE TRUST argues that the lien is contractual in nature and not statutory. Section 9-104(b) of the Uniform Commercial Code excludes landlord's liens from coverage under Article 9. Comments to this section make it clear that the exclusion only applies to statutory liens and not to a landlord's lien created by contract. MARINE TRUST relies on *In re King Furniture City, Inc.*, 240 F.Supp. 453 (E.D.Ark.1965). In that case, the lease provided that the landlord had an express contract lien on all property, chattels or merchandise placed on the leased premises. The lease further provided that such lien was "given in addition to the Landlord's statutory lien and shall be cumulative thereto." The court rejected the Landlord's contention that the lien on the inventory provided for in the lease was excluded from the provisions of the UCC by reason of Section 9-104(b), holding that the term "landlord's lien" refers only to liens created by statute. The court reasoned that:

"[T]o permit a lien created by contract in such a manner to be excluded from the requirements of the Uniform Commercial Code would, in many instances, greatly restrict the benefits expected to be obtained from the Uniform Commercial Code in connection with the financing of

inventories and lending against accounts receivables."

*King Furniture* is clearly distinguishable from the case at bar. The lease in the present case provides only that the landlord's statutory lien shall be the security for the rent and the performance of the tenant's obligations under the lease. The lien provided for by statute is not enlarged or diminished in any way. *King Furniture* and the other cases cited by MARINE TRUST involve landlord's liens which did not arise solely by virtue of a statute. This Court finds that NORTHEAST's lien is a statutory lien.

■ The next issue, one which was raised by the Court, is whether NORTH-EAST's lien terminated when the crops were harvested from the land. Although MARINE TRUST suggests in its brief that the Missouri statutory landlord's lien is possessory in nature and that NORTH-EAST lost its lien when it gave EDDING-FIELD permission to remove the crops from the premises, MARINE TRUST fails to cite any authority for its position. NORTHEAST cites *Holt v. Coyler*, 71 Mo. App. 280 (1897), a case involving a dispute between a landlord and a mortgage of the tenant over crops grown on the leased premises. In *Holt,* after the crops had been severed and stored, the landlord took possession with the tenant's permission. The Court held that the landlord's lien was superior to the interest of the mortgagee, noting that where a landlord acquires possession with the tenant's consent, the rent must be paid in full before the crop can be retaken by the tenant or the tenant's mortgagee. Inasmuch as the particular question of whether the landlord's lien extends to harvested crops was not decided by the court in *Holt,* that case is of little assistance to this Court. However, this Court is of the view that the issue may be resolved from the language of the statute itself.

The statute gives the landlord a lien on *"crops grown* on the demised premises" and provides that the lien continues for eight months after the rent becomes due. The language of the statute does not restrict the lien to either growing crops or to harvested crops stored on the leased premises. Given the clear language of the statute, this Court holds that NORTHEAST's lien did not expire when the soybeans were harvested.

■ The second issue which this Court requested that the parties brief is whether NORTHEAST's statutory lien was lost when the crops were removed from Missouri to Illinois. Again, MARINE TRUST seeks to apply Article 9 of the U.C.C.[1] For reasons previously stated herein, the U.C.C. has no application to NORTH-EAST's lien. NORTHEAST contends that this Court must recognize the statutory landlord's lien granted by Missouri law under the full faith and credit clause of the United States Constitution.[2] NORTH-EAST is incorrect.

It is clear that the lien which NORTH-EAST claims under Missouri law was lost when the crops were removed from Missouri to Illinois. *Walworth v. Harris,* 129 U.S. 355, 9 S.Ct. 340, 32 L.Ed. 712 (1889); *J.T. Fargason Co. v. Furst,* 287 Fed. 306 (8th Cir.1923). Rejecting the landlord's contention that his lien for rent under Arkansas law continued even though the crops were removed to Tennessee, the court in *Fargason* stated:

"This contention cannot be upheld. This lien arose solely perforce a statute local to Arkansas—not, of course, local, in the sense that no other state has it— but in the sense that a lien is not given by the common law, or by the law merchant, but comes into existence only when a statute creating it is enacted. The rule is general that a statute of a state has no extraterritorial effect, and that it operates only within the bound-

---

1. Section 9–103(1)(d) provides that upon the removal of collateral from one state to another, the creditor has four months within which to reperfect its security interest.

2. That clause, which is not without exception, provides that the various states must recognize the legislative acts, public records and judicial decisions of the other states.

aries of the state which enacts it. *Wilkinson v. Leland*, 27 U.S. 627, 2 Pet. 627, 7 L.Ed. 542; *McCool v. Smith*, 66 U.S. 459, 1 Black, 459, 17 L.Ed. 218. Of course, this general rule is merely of value here by analogy. But the ruled cases and the textwriters seem to agree that a landlord's lien created by a state statute has no extraterritorial force. *Millsaps v. Tate*, 75 Miss. 150, 21 South 663; 24 Cyc. 1259; 16 R.C.L. 989; 19 Am. & Eng.Encyc. of Law, 24; Underhill, Landlord & Tenant, 1446; Jones on Liens, 103; *Marsh v. Ellsworth*, 37 Ala. 85. We think the learned trial court was correct in holding that the landlord's lien statute of Arkansas was inoperative in the state of Tennessee. 287 Fed. 306, 309–10.

It is only by virtue of the doctrine of comity that a court of one state will give effect to a lien granted by the laws of another state. *Walworth, supra.* As the Supreme Court long ago explained:

"[T]he court [in *Green v. Van Buskirk*, 72 U.S. 307 5 Wall. 307, 18 L.Ed. 599] considered very fully the much controverted principle as to the extraterritorial effect of laws affecting the title or liens upon the property in one State when that property was carried away or became the subject of litigation in another State; and while it was seen that in many cases it had been held that a court of one State would give effect to the law of domicil of another State, it was said: 'But after all, this is a mere principle of comity between the courts which must give way when the statutes of the country, where property is situated, or the established policy of its laws prescribe to its courts a different rule. The learned commentator, already referred to, [Story on Conflict of Laws, Section 390,] in speaking of the law in Louisiana, which gives paramount title to an attaching creditor over a transfer made in another State, which is the domicil of the owner of the property, says: "No one can seriously doubt that it is competent for any State to adopt such a rule in its own legislation, since it has perfect jurisdiction over all property, personal as well as real, within its territorial limits. Nor can such a rule, made for the benefit of innocent purchasers and creditors, be deemed justly open to the reproach of being founded in a narrow or selfish policy." Again, he says: "Every nation, having a right to dispose of all the property actually situated within it, has (as has been often said) a right to protect itself and its citizens against the inequalities of foreign laws, which are injurious to their interests." '

The court also cited with approval the following language (Section 388) from the same authority: 'The municipal laws of a country have no force beyond its territorial limits, and when another government permits these to be carried into effect within her jurisdiction, she does so upon a principle of comity. In doing so, care must be taken that no injury is inflicted upon her own citizens, otherwise justice would be sacrificed to comity....' "

129 U.S. at 364, 9 S.Ct. at 342.

After careful consideration, this Court concludes that MARINE TRUST has not asserted any injury to its interest which would cause this Court to find that comity should not be observed. It is apparent from the security agreement itself that MARINE TRUST knew that the crops in which it was acquiring an interest were grown on leased premises. Accordingly, NORTHEAST's statutory landlord's lien granted under Missouri law is superior to MARINE TRUST's security interest.

THEREFORE, IT IS ORDERED, that the Trustee distribute the proceeds of the sale of the crop as follows:

1. The sum of $11,704.74 to NORTHEAST;

2. The balance of the proceeds from the sale to MARINE TRUST;

3. Any accrued interest on the proceeds shall be prorated between NORTHEAST and MARINE TRUST according to their respective interests; and

4. Any expenses and costs shall be prorated between NORTHEAST and MARINE TRUST according to their respective interests.

This Opinion and Order is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.