SHURLOW v BONTHUIS

Docket No. 107140. Argued December 11, 1997 (Calendar No. 14). Decided April 1, 1998.

William D. Shurlow and Shurhoff Development Company leased commercial office space to the predecessors of Market Place Media, Inc. The leases granted the lessors landlord's liens on personal property located on the leased premises. As an inducement for the leases, Thomas Bonthuis, an officer of MPM's predecessors, executed two personal guaranty agreements to secure the predecessors' performance. The lessors never perfected the liens. After MPM failed to pay rent, the lessors brought an action in the Kent Circuit Court against MPM and Bonthuis, seeking enforcement of the guaranty agreements.

MPM and Bonthuis filed petitions under Chapter 7 of the Bankruptcy Code, and the circuit court stayed the action before it, pending resolution of the bankruptcy proceedings. Because the liens had not been perfected, the plaintiffs claims in the bankruptcy court were subordinated, and ultimately they received no proceeds from the sale by the bankruptcy trustee of MPM's personal property. Thereafter, Bonthuis withdrew his bankruptcy petition, and the trial court lifted its stay.

Bonthuis then moved for summary disposition under MCR 2.116(C)(8), (10), asserting that the plaintiffs' failure to perfect their liens in accordance with Article 9 of the UCC freed him from any obligation under his personal guaranties. The court, Paul J. Sullivan, J., granted summary disposition for the defendant. The Court of Appeals, DOCTOROFF, C.J., and NEFF and FITZGERALD, JJ., affirmed (Docket No. 186221). The plaintiffs appeal.

In a unanimous opinion by Justice BOYLE, the Supreme Court *held*:

The lien granted in the underlying lease agreement falls within the coverage of article 9 of the UCC. UCC § 9207 does not discharge the defendant's obligation under the guaranty agreements.

1. Article 9 of the UCC clearly indicates an intent to bring all consensual transactions, including consensual landlord's liens, within its scope. Accordingly, the UCC applies to the lien in question, and it

follows that plaintiffs held a secured, albeit unperfected, security interest in the personal property of the lessees.

2. A security interest in chattel paper is an interest in the paper itself, not the goods represented by the paper. The Court of Appeals erroneously assumed that any document that fits within the definition of chattel paper triggers article 9's provisions regarding chattel paper. However, article 9 by its terms applies only when documents that otherwise fall within the definition of chattel paper are used by the creditor as security for further financing or are otherwise sold or transferred. In this case, no assertions were made that indicate that the lease and guaranty agreements were sold, pledged, or otherwise assigned as security in any transaction. Thus, while these documents may fit within § 9105's definition of chattel paper, they are not subject to article 9's provisions regarding security interests in chattel paper until they are used by the creditor as collateral or are otherwise transferred. It is a condition precedent for application of article 9 to chattel paper that the chattel paper be used as collateral or otherwise transferred. This condition precedent was not met in this case. The Court of Appeals erred in holding that § 9207 could be invoked to provide a remedy for the defendant.

Affirmed in part, reversed in part, and remanded.

218 Mich App 142; 553 NW2d 366 (1996) affirmed in part and reversed in part.

*Marvin & Associates* (by *Richard A. Marvin* and *Jon V. Coretti*) for the plaintiffs-appellants.

*Law, Weathers & Richardson, P.C.* (by *Douglas W. Van Essen* and *Ingrid A. Jensen*), for the defendant-appellee.

BOYLE, J. As a result of plaintiffs' failure to perfect their security interest in the lessee's personal property, defendant guarantor contends that he was discharged from any liability under two personal guaranty agreements. The circuit court granted defendant's motion for summary disposition and the Court of Appeals affirmed. We granted leave to appeal to determine whether a security interest in personal property given as collateral to secure payment under

a lease agreement for which defendant executed a personal guaranty was subject to UCC filing requirements and, if so, whether the failure on the part of the plaintiffs to perfect their security interest in the personal property under state law constitutes impairment of the collateral so as to discharge the obligation of the guarantor and release him from further liability upon default of the lessee. We hold that the lien granted in the underlying lease agreement falls within the coverage of article 9 of the UCC and that § 9207 does not discharge the defendant's obligation under the guaranty agreements. We affirm in part and reverse in part the decision of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

I

The relevant facts of this case as set forth by the Court of Appeals[1] are:

> In 1991, plaintiffs and the predecessors of Market Place Media, Inc. (MPM), entered into a series of commercial leases for office space. In these leases, the predecessors granted plaintiffs a landlord's lien covering personal property located on the leased premises. As an inducement for these leases, Bonthuis, an officer for the predecessors, executed two personal guaranty agreements promising to secure the predecessors' performance under the leases. However, plaintiffs failed to do anything to perfect their lien on the personal property in question. Additionally, MPM terminated Bonthuis' employment soon after its purchase of the business.
>
> In 1993, MPM failed to pay rent due under the leases. As a result, plaintiffs filed suit in the district court against MPM and Bonthuis, and they received a judgment of possession

---

[1] 218 Mich App 142, 143-144; 553 NW2d 366 (1996).

and a money judgment for $9,354.32 against MPM and Bonthuis. Subsequently, plaintiffs filed this case against MPM and Bonthuis for additional damages. However, MPM and Bonthuis filed bankruptcy petitions seeking protection from their creditors under Chapter 7 of the Bankruptcy Code. As a result, the trial court stayed this case pending the resolution of the bankruptcies.

The bankruptcy trustee sold MPM's personal property for $34,929.50. Plaintiffs filed a claim against the bankruptcy estate for $22,758.93, claiming secured status pursuant to the landlord's lien in the lease and the district court judgment. Notwithstanding this claim, the bankruptcy court subordinated plaintiffs' claim to the interest of MPM's bankruptcy trustee. Because of this subordination, plaintiffs received no proceeds from the sale of MPM's personal property by the bankruptcy trustee. After the rejection of plaintiffs' claim in the bankruptcy court, Bonthuis withdrew his bankruptcy petition, and the trial court lifted the stay that had suspended the proceedings in this case.

Subsequently, Bonthuis moved for summary disposition under MCR 2.116(C)(8) and (10), claiming that plaintiffs' failure to file a financing statement in accordance with Article 9 of the Uniform Commercial Code, which would have perfected their landlord's lien, impaired the collateral consisting of MPM's personal property, and freed Bonthuis from any obligation under his personal guaranties. Plaintiffs argued that their landlord's lien was exempted from the coverage of Article 9 by MCL 440.9104(b); MSA 19.9104(b), so Bonthuis was not protected under Article 9 from plaintiffs' claims. Alternatively, plaintiffs argued that even if their landlord's lien fell within the coverage of Article 9, MCL 440.9207; MSA 19.9207 did not free Bonthuis from his obligations under the guaranty agreements. The trial court rejected plaintiffs' arguments and granted summary disposition in Bonthuis' favor.

It is from the Court of Appeals affirmance of the trial court's grant of defendant's motion for summary disposition that the plaintiffs now appeal.

II

We address first plaintiffs' claim that the lien granted in the underlying lease agreement was a landlord's lien and thus not subject to the provisions of the UCC under MCL 440.9104(b); MSA 19.9104(b). A landlord's lien is the right of a landlord to levy upon the goods of a tenant in satisfaction of unpaid rents or property damage.[2] Although landlords' liens may arise by statute, common law, or contract,[3] commonly these liens take the form of statutory liens that give the lessor the status of a preferred creditor with regard to the lessee's property.[4] It is without dispute that subsection 9104(b) excludes landlords' liens from article 9 coverage.[5] What is at issue in this appeal is whether subsection 9104(b) contemplates consensual security interests embodied in a contract, or whether it excludes only those landlords' liens that arise by operation of law or by common law. Arguing that Michigan recognizes neither statutory nor common-law landlords' liens, plaintiffs claim that the clear intent of the Legislature was to apply the exclusion of subsection 9104(b) to contractual landlord's liens such as the one at issue.[6] The standard of review is

---

[2] Barron's Law Dictionary (3d ed), p 278.

[3] 218 Mich App 143, n 1.

[4] Barron's, n 2 *supra.*

[5] Subsection 9104(b) provides in part:

This article does not apply:

*       *       *

(b) To a landlord's lien . . . .

[6] Defendant argues that Michigan has recognized a common-law land-lord's lien in *SS Kresge Co v Twelve Seventy-five Woodward Ave Corp*, 270 Mich 218, 221; 258 NW 252 (1935). While that case did recognize a form of such a lien, journeying back to *Treackle v Coke*, 1 Vern 165; 23 Eng Rep

de novo with regard to questions of law. *People v Carpentier*, 446 Mich 19; 521 NW2d 195 (1994).

A

Article 9 of the UCC provides a comprehensive scheme by which security interests in personal property and fixtures are regulated. All transactions intended to create a security interest in personal property and fixtures are contemplated under this article.[7] Generally, security interests that are not consensual but that arise by operation of law are excluded under this article.[8] Substance predominates over form in determining article 9 applicability.[9] Thus, the determinative factor is not the form of the transaction as much as it is the intent of the parties in entering into the transaction.[10]

---

389 (1683) to answer what was a new question in our state, our decision in this case does not require us to determine whether the antiquated remedy provided in *Kresge* remained viable before the Legislature's adoption of subsection 9104(b), or, for that matter, whether it remains viable today.

[7] *Brown v Yousif*, 445 Mich 222, 231; 517 NW2d 727 (1994) (the Legislature intended article 9 to be of general applicability, covering all forms of security interests in personal property, regardless of its form). See also MCL 440.9101; MSA 19.9101, comment; MCL 440.9102; MSA 19.9102, comment; White & Summers, Uniform Commercial Code (3d ed), § 21-2, p 926.

Although lacking the force of law, the official comments appended to each section of the UCC are useful aids to interpretation and construction. *Szabo v Vinton Motors, Inc*, 630 F2d 1, 4 (CA 1, 1980); White & Summers, *supra*, § 4, p 12.

[8] MCL 440.9104; MSA 19.9104. See also White & Summers, n 7 *supra*, § 21-2, p 926.

[9] MCL 440.9102; MSA 19.9102, MCL 440.9104; MSA 19.9104, comment. "If Article Nine otherwise applies, the parties cannot render it inapplicable merely by casting their arrangement in the language of some particular pre-Code security device (or in the language of some other type of transaction such as a lease)." White & Summers, n 7 *supra*, § 21-1, pp 925-926.

[10] "[T]he principal test whether a transaction comes under this Article is: is the transaction intended to have effect as security?" MCL 440.9102; MSA 19.9102, comment 1.

B

The scope of article 9 of the UCC as embodied in § 9102 provides in part:

> (1) Except as otherwise provided in section 9104 on excluded transactions, this article applies;
>
> (a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts; and also
>
> (b) To any sale of accounts or chattel paper.
>
> (2) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract, and lease or consignment intended as security. This article does not apply to statutory liens except as provided in section 9310.

Despite the broad scope of § 9102, plaintiffs argue that article 9 is inapplicable to the lien in question because of an express provision in subsection 9104(b) excluding landlord's liens from article 9 coverage.[11]

While a literal reading of subsection 9104(b) supports plaintiffs' argument, we cannot ignore the clear intent of article 9, which is to bring all consensual transactions within the scope of UCC coverage. Paragraph 12 of the underlying lease agreement between plaintiffs and the lessees provided:

> Lessor's Lien. In the event Lessee shall fail to pay the rent provided for herein or other wise default in the performance of Lessee's obligations hereunder, Lessor shall have a lien on the property of Lessee located on the Premises to secure the payment or performance due Lessor.

_____

[11] See n 5.

The UCC "is to be liberally construed and applied to promote its underlying purposes and policies." MCL 440.1102; MSA 19.1102.[12] In construing the act in accordance with its purposes, the text of each section should be read in the light of the purpose and policy of the rule or principle in question.[13] There is no dispute that the lien in question was a consensual contractual lien. To effectuate the intent of § 9102 to bring all consensual security interests in personal property and fixtures under article 9 coverage, it follows that article 9 applies to the lien in question. Indeed, comment 1 to § 9102 provides further support for this position by stating: "Section 9-104 excludes certain transactions where the security interest . . . arises under statute or common law by reason of status and not by consent of the parties."

Courts in other jurisdictions addressing this same question have reached similar results.[14] See, e.g., *In re King Furniture City, Inc*, 240 F Supp 453 (ED Ark, 1965); *In re Leckie Freeburn Coal Co*, 405 F2d 1043

---

[12] Subsection 1102(2) provides that the underlying purposes of the act are:

  (a) to simplify, clarify and modernize the law governing commercial transactions;
  (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
  (c) to make uniform the law among the various jurisdictions.

The UCC should be construed narrowly or broadly, as the case may be, in conformity with the purposes and policies involved. MCL 440.1102; MSA 19.1102, comment 1.

[13] MCL 440.1102; MSA 19.1102, comment 1.

[14] See White & Summers, n 7 *supra*, § 21-7, p 951. "Article Nine does not apply to landlord's liens arising under the statute or case law. However, several cases have arisen in which the parties have, in effect, sought to create landlord liens by contract. Here, the courts hold that Article Nine applies, and properly so." *Id.*

(CA 6, 1969); *Dunham's Music House, Inc v Asheville Theatres, Inc*, 10 NC App 242, 245; 178 SE2d 124 (1970); *United States v Globe Corp*, 113 Ariz 44, 50; 546 P2d 11 (1976); *Todsen v Runge*, 211 Neb 226, 232-233; 318 NW2d 88 (1982). Plaintiffs argue that most of, if not all, these cases are distinguishable insofar as they involve states that enacted statutory landlords' liens or recognize common-law landlords' liens. However, plaintiffs' argument does not alter our view that article 9 encompasses the lien in question, nor does it persuade us that the act should not be construed in accordance with its underlying purposes and policies.[15] Accordingly, we hold that the UCC applies to the lien in question.[16]

III

Having concluded that plaintiffs' consensual lien in personal property falls within the scope of article 9 of the UCC, it follows that plaintiffs held a security interest in the personal property of the lessees that they had not perfected.[17] As guarantor of that secured interest, defendant contends that the plaintiffs' negligence in failing to perfect their secured interest released him from obligation under the guaranty agreements pursuant to § 9207. We disagree.

---

[15] Moreover, plaintiffs have failed to cite, and we have not found, even one case that expressly or impliedly supports plaintiffs' interpretation of subsection 9104(b).

[16] We note that plaintiffs filed a proof of claim with the United States Bankruptcy Court, seeking secured status in the amount of $22,758.93 on the basis of their lien in the lease agreement and their district court judgment of possession and money judgment. Plaintiffs represented to the bankruptcy court that their interest was a secured interest in part because of the lien in the lease and, after receiving an unfavorable result in that court, took the position that the interest did not fall under the UCC.

[17] It is undisputed that plaintiffs did not perfect their security interest in the personal property in question.

A

Defendant asserts that as a guarantor of the secured interest in the commercial lease agreement between plaintiffs and lessees, he is a "debtor" for purposes of § 9105.[18] As such, defendant claims he is entitled to all the protections afforded a debtor under the UCC, including the duty of a creditor to protect and preserve the collateral securing the underlying debt. In effect, as guarantor, defendant contends that he steps into the debtor's shoes and gains the right to assert article 9 defenses. Defendant relies on § 9207 and on the Court of Appeals decision in *Nat'l Bank of Detroit v Alford*, 65 Mich App 634; 237 NW2d 592 (1975), to support his position that his liability under the personal guaranty agreements was discharged as a result of plaintiffs' negligence in failing to perfect their secured interest.

B

The UCC recognizes a secured party's duty to preserve and protect collateral pursuant to § 9207. Section 9207 provides in part:

(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the

---

[18] Defendant contends that the definition of debtor in MCL 440.9105(1)(d); MSA 19.9105(1)(d) encompasses guarantors for the reason that a guarantor owes payment on the debt. MCL 440.9105(1)(d); MSA 19.9105(1)(d) provides in part:

"Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he or she owns or has rights in the collateral . . . . Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

case of an instrument or chattel paper reasonable care includes taking steps to preserve rights against prior parties unless otherwise agreed.

* * *

(3) A secured party is liable for any loss caused by his failure to meet any obligation imposed by the preceding subsections but does not lose his security interest. [MCL 440.9207; MSA 19.9207,.]

In *Nat'l Bank of Detroit, supra*, the defendant guarantors were relieved of any obligation under a guaranty agreement because of the plaintiff's failure to promptly record a chattel mortgage on an airplane. Rejecting plaintiff's claim under MCL 440.3606; MSA 19.3606, the Court concluded that § 9207 provided an additional, independent duty on the part of the creditor to promptly record the chattel mortgage. Failure on the part of the creditor to perfect its interest resulted in the unjustifiable impairment of the collateral on which the guarantors had a right to rely and spoiled the guarantors' right of subrogation. Accordingly, defendant guarantors were discharged from any liability under the guaranty agreement.[19]

---

[19] There is ample support for the proposition that an unjustifiable impairment of collateral includes a failure to perfect a security interest if such failure results in the loss of a surety's or guarantor's right of subrogation. See *First Bank & Trust Co v Post*, 10 Ill App 3d 127; 293 NE2d 907 (1973); *Executive Bank of Fort Lauderdale, Florida v Tighe*, 66 AD2d 70; 411 NYS2d 939 (1978), modified on other grounds 54 NY2d 330; 445 NYS2d 425; 429 NE2d 1054 (1981); *Van Balen v Peoples Bank & Trust*, 3 Ark App 243; 626 SW2d 205 (1981); *North Bank v Circle Investment Co*, 104 Ill App 3d 363; 432 NE2d 1004 (1982); *Rempa v LaPorte Production Credit Ass'n*, 444 NE2d 308 (Ind App, 1983); *Port Distributing Corp v Pflaumer*, 880 F Supp 204 (SD NY, 1995), aff'd 70 F3d 8 (CA 2, 1995). Each of these cases, however, relies not on § 9-207, but on § 3-606. Section 3-606 acts to discharge a surety when, without the creditor's consent, the creditor "unjustifiably impairs any collateral for the instrument . . . ." In 1993, MCL 440.3606; MSA 19.3606 was repealed by the Legislature.

A determination whether § 9207 discharges defendant's guaranty here requires careful consideration of the scope and definitions of article 9. Subsection 9207(1) provides that when the collateral is an instrument or chattel paper, "reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed." MCL 440.9207(1); MSA 19.9207(1). Reasonable care in this context might mean that the secured party in possession of instruments or chattel paper may be required to "file a financing statement, provide notice of default, and inform accommodation parties of a failure on the part of the maker of a note to make payment."[20]

Chattel paper, as defined by subsection 9105(1)(b), is "a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods . . . ." However, chattel paper as defined under subsection 9105(1)(b) must not be confused with chattel paper that is itself collateral.[21] Collateral is "the property subject to a security interest, and includes . . . chattel paper which [has] been sold." MCL 440.9105(1)(c); MSA 19.9105(1)(c). A security interest in chattel paper is an interest in the paper itself, not the goods represented by the paper.[22]

---

[20] Hawkland, Lord & Lewis, Uniform Commercial Code, § 9-207:01, p 1.

[21] See Reiley, Guidebook to Security Interests in Personal Property (2d ed), § 2.05, p 2-8 (chattel paper in the abstract must not be confused with chattel paper that is itself the collateral).

[22] MCL 440.9105; MSA 19.9105, comment states:

> To secure his own financing a secured party may wish to borrow against or sell the security agreement itself along with his interest in the collateral which he has received from his debtor. Since the refinancing of paper secured by specific goods presents some problems of its own, the term "chattel paper" is used to describe this kind of collateral.

The Court of Appeals erroneously assumed that any document that fits within the definition of "chattel paper" triggers article 9's provisions regarding chattel paper. However, article 9 by its terms applies only when documents that otherwise fall within the definition of chattel paper are used by the creditor as security for further financing or are otherwise sold or transferred. MCL 440.9102; MSA 19.9102.[23] Here, no assertions were made that indicate that the lease and guaranty agreements were sold, pledged, or otherwise assigned as security in any transaction. Thus, while these documents may fit within § 9105's definition of "chattel paper," they are not subject to article 9's provisions regarding security interests in chattel paper until they are used by the creditor as collateral or are otherwise transferred. MCL 440.9102; MSA 19.9102. That is, it is a condition precedent for application of article 9 to chattel paper that the chattel paper be used as collateral or otherwise transferred. This condition precedent was not met here.

Contrary to the defendant's contention, the lease agreement, coupled with defendant's guaranties, did

---

A typical chattel paper transaction may be described as follows:

> A dealer sells a tractor to a farmer on conditional sales contract. The conditional sales contract is a "security agreement," the farmer is the "debtor," the dealer is the "secured party" and the tractor is the type of "collateral" defined in Section 9-109 as "equipment." But now the dealer transfers the contract to his bank, either by outright sale or to secure a loan. Since the conditional sales contract is a security agreement relating to specific equipment, the conditional sales contract is now the type of collateral called "chattel paper." [MCL 440.9105; MSA 19.9105, comment.]

[23] See also Jackson, *Embodiment of rights in goods and the concept of chattel paper*, 50 U Chi L R 1051, 1053 (1983) (chattel paper is not relevant for any article 9 purpose until it is used as collateral in a secured transaction).

not constitute the collateral subject to a security interest. MCL 440.9105(1)(c); MSA 19.9105(1)(c). Rather, the collateral was at all times the personal property of the lessee, and there has been no assertion by the parties or evidence offered that warrants a conclusion that plaintiffs had possession of that property.[24] The Court of Appeals erred in holding that § 9207 could be invoked here to provide a remedy for defendant. Accordingly, we do not believe that summary disposition was properly granted in favor of the defendant under § 9207 of the act.[25]

IV

For the reasons stated, we hold that the lien granted in the underlying lease agreement falls within the coverage of article 9 of the UCC and that § 9207 does not discharge the defendant's obligation under the guaranty agreements. Accordingly, the decision of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded for further proceedings.

MALLETT, C.J., and BRICKLEY, CAVANAGH, WEAVER, KELLY, and TAYLOR, JJ., concurred with BOYLE, J.

---

[24] Had plaintiffs had possession of the personal property of the lessee they would have held a perfected security interest in the property, MCL 440.9302(1)(a); MSA 19.9302(1)(a), MCL 440.9305; MSA 19.9305, and defendant's argument that his liability under the personal guaranty agreements was discharged as a result of plaintiffs' failure to perfect their secured interest would necessarily fail.

[25] We do not foreclose defendant's ability to claim on remand that, under the common law, impairment of collateral discharges a guaranty. Because this issue was not addressed by either the trial court or the Court of Appeals, we refrain from reaching this issue.