In re Michael R. MARSHALL, Anne F. Marshall, Debtors.

Michael R. Marshall, Anne R. Marshall, Plaintiffs,

v.

Leroy and Helen Aubuchon, Lewis and Wilma Ruyle, Harold McEvers, W. Dean and Clara Huff, William and Joseph Rigsbey, Defendants.

Bankruptcy No. 99–30765.
Adversary No. 99–3080, 99–3133, 99–3134, 99–3127, 99–3128.

United States Bankruptcy Court,
S.D. Illinois.

Sept. 2, 1999.

Ronald L. Pallman, St. Louis, MO, for plaintiff.

William H. Strang (Aubuchon), Jerseyville, IL, Steven N. Mottaz (Ruyle, McEvers, Huffs), Alton, IL, for defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

At issue in these cases is whether the debtors may avoid the landlord's liens of the defendants, all of whom leased real estate to the debtors for agricultural purposes.

The facts are not in dispute. Prior to filing their Chapter 12 bankruptcy petition, the debtors, Michael and Anne Marshall, entered into several farm leases. Three of the leases (Aubuchon, Ruyle, McEvers leases) were written agreements that contained a provision for a landlord's lien on the debtors' crops to secure the payment of rent. Another of the leases (Huff lease) was in writing but did not

provide for any type of security interest. The final lease (Rigsbey lease) was an oral agreement between the debtors and the defendants.

## A. Aubuchon, Ruyle, and McEvers Leases

In the *Aubuchon, Ruyle,* and *McEvers* cases, each of the written leases contained the following provision: [1]

> **Landlord's Lien.** The Landlord's lien provided by law on crops grown or growing shall be the security for the rent herein specified and for the faithful performance of the terms of the lease. The Tenant shall provide the Landlord with the names of persons to whom the Tenant intends to sell crops grown on these demised premises at least 30 days prior to the sale of such crops. A lesser period may be allowed by mutual written agreement. If the Tenant fails to pay the rent due or fails to keep any of the agreements of this lease, all costs and attorney fees of the Landlord in enforcing collection or performance shall be added to and become a part of the obligations payable by the Tenant.

Under the terms of these leases, the debtors agreed to pay a specified amount of cash rent in exchange for the use of the defendants' acreage. It is undisputed that the debtors are in default under each of these leases.[2]

After commencing their Chapter 12 bankruptcy case, the debtors filed complaints against each of the defendants pursuant to 11 U.S.C. § 545 to avoid the fixing of landlord's liens on property of the estate. While the parties agree that the debtors may avoid the fixing of statutory landlord's liens, defendants Aubuchon,

Ruyle, and McEvers maintain that they possess valid consensual liens which may not be avoided. The debtors and each of the defendants seek summary judgment in their favor on the debtors' complaints.

## B. Huff Lease

In the *Huff* case, the debtors entered into a written lease in which they agreed to rent 246 acres of land from the defendants for $33,210 yearly, payable in installments of $11,070 and $22,140. The agreement did not refer to any type of lien for nonpayment of rent. The debtors, as in the previous cases, filed a complaint to avoid the Huffs' statutory landlord's lien and seek summary judgment on their complaint.

## C. Rigsbey Lease

In the *Rigsbey* case, the debtors had an oral lease with the defendants, under which they were to pay annual rent of $14,550. The debtors still owed the Rigsbeys $7,275 at the time of bankruptcy. The debtors argue that in the absence of any written agreement, the Rigsbeys' only security is their statutory landlord's lien, which may be avoided by the debtors pursuant to § 545. Again, the debtors seek summary judgment on their complaint to avoid the Rigsbeys' lien

### DISCUSSION

At common law, a landlord was not entitled to a lien on a tenant's property to secure the payment of rent. *Faubel v. Michigan Boulevard Bldg. Co.,* 278 Ill. App. 159, 169–70 (1934). However, in 1873, Illinois enacted legislation granting a landlord a statutory lien on a tenant's crops for the payment of rent. Ill.Laws

---

**1.** The lease provisions at issue vary only in their substitution, in some instances, of the word "lessor" for "landlord" and the word "lessee" for "tenant."

**2.** Under the Aubuchon lease, the debtors were to pay rent of $24,600 for 202 acres of land, payable in installments of $14,600 and $10,-000. The debtors still owe $10,000 under this

lease. The lease with Lewis and Wilma Ruyle provided for yearly rent of $29,500 for 218 acres of land. The debtors still owe $14,625 under that lease. Finally, under the agreement with Harold McEvers, the debtors leased a 494 acre tract of real estate for $42,480 per year. According to the debtors, $17,240 remains unpaid.

1873, p. 117, § 31. Now codified at § 9–316 of the Illinois Code of Civil Procedure, the landlord lien provision states, in pertinent part:

> Every landlord shall have a lien upon the crops grown or growing upon the demised premises for the rent thereof, whether the same is payable wholly or in part in money or specific articles of property or products of the premises, or labor, and also for the faithful performance of the terms of the lease. Such lien shall continue for the period of 6 months after the expiration of the term for which the premises are demised, and may be enforced by distraint. . . .

735 Ill.Comp.Stat. 5/9–316.

 It is well established that a landlord's statutory lien for rent against crops grown on leased premises is superior to any consensual lien that the debtor may give on the crops, even those created under Article 9 of the Uniform Commercial Code. *See Dwyer v. Cooksville Grain Co.,* 117 Ill.App.3d 1001, 73 Ill.Dec. 497, 454 N.E.2d 357, 359 (1983). However, a landlord's lien for unpaid rent may be avoided in bankruptcy. Section 545 of the Bankruptcy Code provides:

> The trustee [3] may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> * * *
>
> (3) is for rent; or
> (4) is a lien of distress for rent.

11 U.S.C. § 545(3), (4).

The Bankruptcy Code defines "statutory lien" as

> [a] lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53). The Illinois statutory landlord lien provision clearly falls under this definition and, therefore, may be avoided by the trustee in bankruptcy.

Applying these provisions in the present cases, the Court finds that, in *Rigsbey,* there was no written security agreement granting the Rigsbeys an independent, consensual landlord's lien in the debtors' crops. Therefore, their only lien is the landlord's lien conferred by Illinois statute, which is voidable by the debtors under § 545 of the Bankruptcy Code. Similarly, while the defendants in *Huff* had a written lease with the debtors, the agreement did not refer to any type of security interest in the crops. Like the Rigsbeys, the Huffs' only interest is a statutory landlord's lien, which may also be avoided by the debtors under § 545.

In the *Aubuchon, Ruyle,* and *McEvers* cases, the defendants acknowledge that any lien for rent arising solely by statute would be subject to avoidance by the debtors. However, they contend that their written lease agreements created consensual liens, which may not be avoided under § 545. In response, the debtors argue that despite the existence of written agreements, the liens in these cases are nothing more than statutory liens subject to avoidance under § 545. In the alternative, the debtors assert that even if the leases here created consensual liens, such liens were not properly perfected under the Uniform Commercial Code ("U.C.C.") and, therefore, are invalid.[4]

 A landlord may obtain an interest in a tenant's personal property to secure

---

**3.** A debtor in possession under Chapter 12 is vested with the avoidance powers of a trustee. *See* 11 U.S.C. § 1203.

**4.** Section 9–302(1) of the U.C.C. provides, with certain exceptions not applicable here, that a financing statement must be filed in order to perfect a security interest. 810 Ill. Comp.Stat. 5/9–302(1). An unperfected security interest would be avoidable by the trustee in bankruptcy under 11 U.S.C. § 544.

the payment of rent either by statute or by agreement. *See First State Bank of Maple Park v. DeKalb Bank*, 175 Ill.App.3d 812, 125 Ill.Dec. 386, 530 N.E.2d 544, 546–47 (1988); *Butters v. Jackson*, 917 P.2d 87, 89 (Utah Ct.App.1996). Generally, in Illinois, the creation of security interests in personal property and fixtures is controlled by Article 9 of the U.C.C. 810 Ill.Comp.Stat. 5/9–101 *et. seq.* Section 9–102, defining the scope of Article 9, provides that "[t]his Article does not apply to statutory liens [with exceptions not relevant here]." 810 Ill.Comp.Stat. 5/9–102(2). In addition, § 9–104(b) of the U.C.C. states that Article 9 "does not apply to a landlord's lien." 810 Ill.Comp.Stat. 5/9–104(b). The defendants rely on § 9–104(b) to support their contention that *all* landlord's liens are excluded from the requirements of Article 9, including consensual liens.

The Court must first examine the language of the leases in question to determine whether, in fact, they created consensual liens. Each lease states that "[t]he Landlord's lien provided by law on crops grown or growing shall be the security for rent herein specified and for the faithful performance of the terms of the lease." A similar provision was examined by the court in *In re Eddingfield*, 67 B.R. 1000 (Bankr.C.D.Ill.1986). The debtor in that case entered into cash rent lease agreements with the plaintiff, Northeast Missouri Electric Power Cooperative. The parties' agreement provided, *inter alia*, that "the Landlord's lien provided by law on crops grown or growing shall be the security for the rent...." *Id.* at 1000. Subsequently, the debtor entered into an agreement with creditor Marine Trust Company, which granted Marine Trust a

security interest in the crops grown on Northeast's land.

After the debtor filed for bankruptcy, Northeast sought reclamation of the crops on the basis of its statutory lien. Marine Trust contended that Northeast's lien was consensual rather than statutory and thus was subject to the filing requirements of the U.C.C. In rejecting Marine Trust's argument, the *Eddingfield* court concluded that the landlord's lien was statutory rather than consensual, despite the existence of a written lease. The court reasoned that because the lease stated that the "landlord's lien provided by law" was to be the security for the rent, the lease provision was merely a recitation of the rights given to the landlord by statute and was, therefore, a statutory lien. *Eddingfield*, 67 B.R. at 1003.[5]

■ Like the lease in *Eddingfield*, the leases here reference the statutory landlord's provision. The lease provisions do not modify in any way the rights given the defendants as landlords under § 9–316 of the Illinois Code of Civil Procedure. The Court concludes, therefore, that despite the lease contracts, the landlords in these cases possess statutory liens, subject to avoidance under 11 U.S.C. § 545.

■ Even assuming, *arguendo*, that the leases in these cases created consensual liens, the debtors would still prevail because the landlords have not complied with the filing provisions of the Uniform Commercial Code.[6] While the broad language of § 9–104(b) would seem to exclude all landlord liens from U.C.C. coverage, an examination of the cases interpreting this section and the official comments to § 9–102 make clear that the exclusionary provisions of § 9–104 apply only to *statutory* landlord's liens.

**5.** While the trustee in *Eddingfield* initially filed a complaint to avoid Northeast's lien under § 545(3), he did not pursue this litigation once he determined that Marine Trust had a perfected security interest in the debtor's crops. Because of this interest, avoidance of Northeast's lien would benefit only Marine Trust, rather than the unsecured creditors. *See* 67 B.R. at 1001–02.

**6.** It is undisputed that none of the defendants in these cases complied with the filing requirements of the U.C.C.

The primary test to determine whether a transaction is subject to the Uniform Commercial Code is whether "the transaction [was] intended to have effect as security." 810 Ill.Comp.Stat. 5/9–102 Comment 1 (1992); *Todsen v. Runge,* 211 Neb. 226, 318 N.W.2d 88, 90 (1982). The purpose of U.C.C. Article 9 is to "bring all consensual security interests in personal property and fixtures under this Article...." 810 Ill.Comp.Stat. 5/9–102, Official Comments (1992). In the present cases, even if the Court were to accept that the leases created consensual liens, the transactions would be "intended to have effect as security" and would, therefore, be controlled by the provisions of the Uniform Commercial Code.

Further, while there is little Illinois authority on this issue, numerous other courts have addressed this issue and have concluded that consensual security interests created by lease *are* subject to the provisions of the Uniform Commercial Code. *In the Matter of King Furniture City, Inc.,* 240 F.Supp. 453, 456 (E.D.Ark. 1965); *In re Eddingfield,* 67 B.R. 1000, 1002; *In re Waldo,* 70 B.R. 16, 19 (Bankr. N.D.Iowa 1986); *Shurlow v. Bonthuis,* 456 Mich. 730, 576 N.W.2d 159, 163 (1998). *See also,* Shockley, David D., *"Illinois Farm Landlord's Lien—Is it Time for a Change?"*, 77 Ill.B.J. 884 (1989). As the court explained in *In re King Furniture City,*

> to permit a lien created by contract in such a manner to be excluded from the requirements of the Uniform Commercial Code would, in many instances, greatly restrict the benefits expected to be obtained from the Uniform Commercial Code.... From this view point it also appears that the term 'landlord's lien' as used in the statute must be interpreted as referring to liens created by statute, for the matter of liens on property such as here involved is obviously considered by all of the remainder of the Code as fitting into a general commercial statute.

*King Furniture City,* 240 F.Supp. at 456–7. This Court agrees with the reasoning of *King Furniture* and those cases which have relied on it, and concludes that even if the landlords in the instant cases had consensual liens, which this Court finds they do not, said liens would be subject to the filing and perfection requirements of the Uniform Commercial Code in order to be valid.

For the reasons stated, the Court finds that, in each case, the defendants had a statutory lien which the debtors may avoid pursuant to 11 U.S.C. § 545. The debtors' motions for summary judgment are granted and, accordingly, judgment should enter in favor of the debtors and against the defendants on the complaints.